IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANTERINE MAPLE, as Administratrix of the Estate of Kevin George, Jr. deceased, the Estate of Zion George, deceased, and in her own right; DESTINY DELUCA; and AMIR HARRIS | No. |
| **Plaintiffs,** | |
| v. | |
| DELAWARE DEPARTMENT OF NATURAL RESOURCES AND ENVIRONMENTAL CONTROL; FRANK M. PIORKO, in his individual capacity and as an agent of the Delaware Department of Natural Resources and Environmental Control; CHARLES E. WILLIAMS, II, in his individual capacity and as an agent of the Delaware Department of Natural Resources and Environmental Control; DANIEL J. BROWER, in his individual capacity and as an agent of the Delaware Department of Natural Resources and Environmental Control; SARAH W. COOKEY, in her individual capacity and as an agent of the Delaware Department of Natural Resources and Environmental Control; EDWARD T. FULFORD, PE; GARY WILLIAMS, PE; KEN EATON, PE; DAVIS, DOWDEN & FEINDEL, INC.; ANDREWS, MILLER & ASSOCIATES, INC.; MANSON CONSTRUCTION COMPANY; KINGFISHER ENVIRONMENTAL SERVICES, INC.; FRANK J. CIANFRANI; and JOHN C. BECKERING, PE | |
| **Defendants** | |

## COMPLAINT - CIVIL ACTION

AND NOW come the plaintiffs, by and through counsel, and demand of the defendants, jointly and severally, damages for loss sustained, plus interest, costs and damages for prejudgment delay upon the causes of action set forth in the following:

## JURISDICTION AND VENUE

1.      This Court maintains jurisdiction pursuant to 28 U.S.C. § 1331 upon a basis that claims asserted arise under the Constitution and laws of the United States.

2.      This Court maintains jurisdiction pursuant to 28 U.S.C.S. § 1343 upon a basis that claims are asserted to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States

3.      Plaintiff further invokes supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for claims arising under state law as these claims form part of the same case and controversy of claims initiated.

4.      Venue of this matter is properly laid in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) upon the basis that a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

5.      Venue of this matter is properly laid in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) upon the basis that named defendants are subject to the court's personal jurisdiction within this judicial district.

6.      Venue of this matter is properly laid in this judicial district pursuant to 28 U.S.C. § 1391(e) upon the basis that claims are asserted against an officer or employee of the United States or any agency thereof acting in their official capacity or under color of legal authority, or an agency of the United States, or the United States, and a defendant in the action resides and a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## THE PARTIES AND RELATED ENTITIES

7.      Plaintiffs incorporate by reference the previous paragraphs of the Complaint as if set forth fully hereto.

8.      Plaintiff Anterine Maple is an adult individual residing 4513 N. 20th Street, Philadelphia, PA

19140 and the natural mother of Kevin George, Jr., decedent and Zion George, decedent.  Plaintiff Anterine

Maple has been duly appointed to serve as the Administratrix of the Estates of Kevin George, Jr., decedent, and

Zion George, decedent, by the Office of the Philadelphia County Register of Wills.

9.      Plaintiff Destiny Deluca is an adult individual residing 338 N. 41st Street, Apt. 4R,

Philadelphia, PA 19104.

10.      Plaintiff Amir Harris is an adult individual residing 4804 N. Bouvier Street, Philadelphia, PA

19141.

11.      Defendant Delaware Department of Natural Resources and Environmental Control

(hereinafter *"DNREC")* is an agency and instrumentality of the State of Delaware created to provide, among

others, core services relating to the managing and maintaining of public beaches, land, parks, natural resources,

wildlife areas and improving Delaware's navigable waterways.  Defendant DNREC operates with a principal

place of business and registered office for process of service located at The Richardson and Robbins Building,

89 Kings Highway, Dover, DE 19901.  At all material times relevant hereto, defendant DNREC acted by and

through its duly authorized employees, agents, workers and/or representatives acting within the scope of their

employment. At all relevant times material hereto, defendant DNREC engaged in substantial, continuous,

regular and systematic business in State of Delaware.  At all relevant times material hereto, defendant DNREC

engaged in substantial, continuous, regular and systematic business purposely availing itself to the benefits of

this judicial district.

12.      Defendant Frank M. Piorko is an adult individual who maintains an address for the

service of process located 33653 E Hunters Run, Lewes, Delaware 19958-4844.  Upon information and

belief, at all relevant times material hereto, defendant Frank M. Piorko was an agent, servant, and

employee of defendant DNREC. Upon information and belief, at all relevant times material hereto,

defendant Frank M. Piorko served as the Division Director of the defendant DNREC's Division of

Watershed Stewardship. Upon information and belief, at all relevant times material hereto, defendant Frank M. Piorko was responsible to plan, oversee and manage the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB. At all relevant times material hereto, defendant Frank M. Piorko was operating under the color of state law, local law, regulations, policies and usages of the State of Delaware within the course and scope of his employment with defendant DNREC. At all relevant times material hereto, defendant Frank M. Piorko engaged in substantial, continuous, regular and systematic business in State of Delaware. At all relevant times material hereto, defendant Frank M. Piorko engaged in substantial, continuous, regular and systematic business purposely availing itself to the benefits of this judicial district. This action is brought against defendant Frank M. Piorko in both his corporate and individual capacities.

13.     Defendant Charles E. Williams, II is an adult individual who maintains an address for the service of process located at The Richardson and Robbins Building, 89 Kings Highway, Dover, DE 19901. Upon information and belief, at all relevant times material hereto, defendant Charles E. Williams, II was an agent, servant, and employee of defendant DNREC. Upon information and belief, at all relevant times material hereto, defendant Charles E. Williams, II served as an Environmental Program Manager I of defendant DNREC's Division of Watershed Stewardship responsible to plan, oversee and manage the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDGE. Upon information and belief, at all relevant times material hereto, defendant Charles E. Williams, II served as a Planner IV of defendant DNREC's Division of Watershed Stewardship responsible to plan, oversee and manage the scope of work detailed in the   Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB. Upon information and belief, at all relevant times material hereto, defendant Charles E.

Williams, II was operating under the color of state law, local law, regulations, policies and usages of the State of Delaware within the course and scope of his employment with defendant DNREC. At all relevant times material hereto, defendant Charles E. Williams, II engaged in substantial, continuous, regular and systematic business in State of Delaware. At all relevant times material hereto, defendant Charles E. Williams, II engaged in substantial, continuous, regular and systematic business purposely availing itself to the benefits of this judicial district. This action is brought against defendant Charles E. Williams, II in both his corporate and individual capacities.

14.     Defendant Daniel J. Brower is an adult individual who maintains an address for the service of process located at The Richardson and Robbins Building, 89 Kings Highway, Dover, DE 19901. Upon information and belief, at all relevant times material hereto, defendant Daniel J. Brower was an agent, servant, and employee of defendant DNREC. Upon information and belief, at all relevant times material hereto, defendant Daniel J. Brower served as an Environmental Program Manager II of defendant DNREC's responsible to plan, oversee and manage the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDGE. Upon information and belief, at all relevant times material hereto, defendant Daniel J. Brower was operating under the color of state law, local law, regulations, policies and usages of the State of Delaware within the course and scope of his employment with defendant DNREC. At all relevant times material hereto, defendant Daniel J. Brower engaged in substantial, continuous, regular and systematic business in State of Delaware. At all relevant times material hereto, defendant Daniel J. Brower engaged in substantial, continuous, regular and systematic business purposely availing itself to the benefits of this judicial district. This action is brought against defendant Daniel J. Brower in both his corporate and individual capacities.

15.     Defendant Sarah W. Cookey is an adult individual who maintains an address for the service of process located at The Richardson and Robbins Building, 89 Kings Highway, Dover, DE 19901. Upon

information and belief, at all relevant times material hereto, defendant Sarah W. Cookey was an agent, servant, and employee of defendant DNREC.  Upon information and belief, at all relevant times material hereto, defendant Sarah W. Cookey served as an Environmental Program Administrator of defendant DNREC's Division of Climate and Coastal Energy responsible to operate  the Delaware Coastal Management Program and approval of dredging and jetty construction plans.  Upon information and belief, at all relevant times material hereto, defendant Sarah W. Cookey was operating under the color of state law, local law, regulations, policies and usages of the State of Delaware within the course and scope of her employment with defendant DNREC. At all relevant times material hereto, defendant Sarah W. Cookey engaged in substantial, continuous, regular and systematic business purposely availing itself to the benefits of this judicial district. This action is brought against defendant Sarah W. Cookey in both her corporate and individual capacities.

16.     Defendant Edward T. Fulford, PE is an adult individual who maintains an address for the service of process located 106 North Washington Street, Suite 102, Easton, MD 21601.  Upon information and belief, at all relevant times material hereto, defendant Edward T. Fulford, PE was a professional engineer and an agent, servant, and employee of Andrews, Miller & Associates, Inc.  Upon information and belief, at all relevant times material hereto, defendant Edward T. Fulford, PE provided professional engineering services in connection with the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB responsible for drafting engineering plans, drawings, technical specifications and contract documents. At all relevant times material hereto, defendant Edward T. Fulford, PE engaged in substantial, continuous, regular and systematic business in State of Delaware.  At all relevant times material hereto, defendant Edward T. Fulford, PE engaged in substantial, continuous, regular and systematic business purposely availing itself to the benefits of this judicial district.

17.     Defendant Gary Williams, PE is an adult individual who maintains an address for the service

of process located 106 North Washington Street, Suite 102, Easton, MD 21601.  Upon information and belief, at all relevant times material hereto, defendant Gary Williams, PE was a professional engineer and an agent, servant, and employee of Andrews, Miller & Associates, Inc.  Upon information and belief, at all relevant times material hereto, defendant Gary Williams, PE served as the Project Engineer in connection with the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDGE responsible to plan, oversee and manage the project. At all relevant times material hereto, defendant Gary Williams, PE engaged in substantial, continuous, regular and systematic business in State of Delaware. At all relevant times material hereto, defendant Gary Williams, PE engaged in substantial, continuous, regular and systematic business purposely availing itself to the benefits of this judicial district.

18.     Defendant Ken Eaton, PE is an adult individual who maintains an address for the service of process located 106 North Washington Street, Suite 102, Easton, MD 21601.  Upon information and belief, at all relevant times material hereto, defendant Ken Eaton, PE was a professional engineer and an agent, servant, and employee of Andrews, Miller & Associates, Inc.  Upon information and belief, at all relevant times material hereto, defendant Ken Eaton, PE served as the Project Engineer in connection with the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB responsible to plan, oversee and manage the project.  At all relevant times material hereto, defendant Ken Eaton, PE engaged in substantial, continuous, regular and systematic business in State of Delaware.  At all relevant times material hereto, defendant Ken Eaton, PE engaged in substantial, continuous, regular and systematic business purposely availing itself to the benefits of this judicial district.

19.     Defendant Davis, Dowden & Feindel, Inc. is a corporation or other business entity duly organized under and existing by virtue of the laws of the state of Maryland with its principal place of business or registered office for the service of process 601 E. Main Street, Suite 100, Salisbury, MD 21804.  At all relevant times material hereto, defendant Davis, Dowden & Feindel, Inc. was an architectural, engineering and surveying

firm. At all relevant times material hereto, defendant Davis, Dowden & Feindel, Inc. was acting as a corporation or other business entity by and through the acts of its authorized agents, ostensible agents, servants, workman and/or employees within and during the course and scope of their employment, authority or apparent authority. At all relevant times material hereto, defendant Davis, Dowden & Feindel, Inc. was the parent company of defendant Andrews, Miller & Associates, Inc. At all relevant times material hereto, defendant Davis, Dowden & Feindel, Inc. engaged in substantial, continuous, regular and systematic business in State of Delaware. At all relevant times material hereto, defendant Davis, Dowden & Feindel, Inc. engaged in substantial, continuous, regular and systematic business purposely availing itself to the benefits of this judicial district.

20.     Defendant Andrews, Miller & Associates, Inc. is a corporation or other business entity duly organized under and existing by virtue of the laws of the state of Maryland with its principal place of business or registered office for the service of process 106 North Washington Street, Suite 102, Easton, MD 21601. At all relevant times material hereto, defendant Andrews, Miller & Associates, Inc. was an architectural, engineering and surveying firm. Upon information and belief, at all relevant times material hereto, defendant Andrews, Miller & Associates, Inc. was responsible to detail, plan, design, engineer, facilitate permitting, oversee and manage the scope of work required in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB. At all relevant times material hereto, defendant Andrews, Miller & Associates, Inc. was acting as a corporation or other business entity by and through the acts of its authorized agents, ostensible agents, servants, workman and/or employees within and during the course and scope of their employment, authority or apparent authority. At all relevant times material hereto, defendant Andrews, Miller & Associates, Inc. operated as a wholly owned subsidiary of defendant Davis, Dowden & Feindel, Inc. At all relevant times material hereto, defendant Andrews, Miller & Associates, Inc. engaged in substantial, continuous, regular and systematic business in State of Delaware. At all relevant times material

hereto, defendant Andrews, Miller & Associates, Inc. engaged in substantial, continuous, regular and systematic business purposely availing itself to the benefits of this judicial district.

21.     Defendant Manson Construction Company is a business entity for profit established pursuant to the laws of the State of Washington with a principal place of business located 5209 E. Marginal Way S., Seattle, Washington. At all relevant times material hereto, defendant Manson Construction Company was a marine contractor whose business operations included, among others, the dredging and renourishment of beaches. Upon information and belief, at all relevant times material hereto, defendant Manson Construction Company was responsible to prosecute the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDGE. At all relevant times material hereto, defendant Manson Construction Company was acting as a corporation or other business entity by and through the acts of its authorized agents, ostensible agents, servants, workman and/or employees within and during the course and scope of their employment, authority or apparent authority. At all relevant times material hereto, defendant Manson Construction Company engaged in substantial, continuous, regular and systematic business in State of Delaware. At all relevant times material hereto, defendant Manson Construction Company engaged in substantial, continuous, regular and systematic business purposely availing itself to the benefits of this judicial district.

22.     Defendant Kingfisher Environmental Services, Inc.  is a corporation or other business entity duly organized under and existing by virtue of the laws of the state of Maryland with a principal place of business located 3002 Singerly Road, Elkton, MD 21921.  At all relevant times material hereto, defendant Kingfisher Environmental Services, Inc. was in the business of providing services including, among others, jetty construction and restoration.  Upon information and belief, at all relevant times material hereto, defendant Kingfisher Environmental Services, Inc. was responsible to prosecute the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.  At all

9

relevant times material hereto, defendant Kingfisher Environmental Services, Inc. was acting as a corporation or other business entity by and through the acts of its authorized agents, ostensible agents, servants, workman and/or employees within and during the course and scope of their employment, authority or apparent authority.  At all relevant times material hereto, defendant Kingfisher Environmental Services, Inc.  engaged in substantial, continuous, regular and systematic business in State of Delaware. At all relevant times material hereto, defendant Kingfisher Environmental Services, Inc.  engaged in substantial, continuous, regular and systematic business purposely availing itself to the benefits of this judicial district.

23.      Defendant Frank J. Cianfrani is an adult individual who maintains an address for the service of process located 100 Penn Square East, Philadelphia, PA 19107.  Upon information and belief, at all relevant times material hereto, defendant Frank J. Cianfrani was an agent, servant, and employee of the United States Army Corps of Engineers, Philadelphia District.  Upon information and belief, at all relevant times material hereto, defendant Frank J. Cianfrani served as Chief of the Regulatory Branch on behalf of the United States Army Corps of Engineers, Philadelphia District.  Upon information and belief, at all relevant times material hereto, Frank J. Cianfrani was operating under the color of federal authority, policies, and usages of the United States Army Corps of Engineers within the course and scope of his employment with United States Department of Defense.   At all relevant times material hereto, defendant Frank J. Cianfrani engaged in substantial, continuous, regular and systematic business in State of Delaware. At all relevant times material hereto, defendant Frank J. Cianfrani engaged in  a substantial part of the events or omissions giving rise to the plaintiffs' claims in this action which occurred in any judicial district. This action is brought against defendant Frank J. Cianfrani in his individual capacity.

24.      Defendant John C. Beckering, PE is an adult individual who maintains an address for the service of process located 100 Penn Square East, Philadelphia, PA 19107.  Upon information and belief, at all

relevant times material hereto, defendant John C. Beckering, PE was an agent, servant, and employee of the United States Army Corps of Engineers, Philadelphia District. Upon information and belief, at all relevant times material hereto, defendant John C. Beckering, PE served as District Commander on behalf of the United States Army Corps of Engineers, Philadelphia District. Upon information and belief, at all relevant times material hereto, John C. Beckering, PE was operating under the color of federal authority, policies, and usages of the United States Army Corps of Engineers within the course and scope of his employment with United States Department of Defense. At all relevant times material hereto, defendant John C. Beckering, PE engaged in substantial, continuous, regular and systematic business in State of Delaware. At all relevant times material hereto, defendant John C. Beckering, PE engaged in a substantial part of the events or omissions giving rise to the plaintiffs' claims in this action which occurred in any judicial district. This action is brought against defendant John C. Beckering, PE in his individual capacity.

## GENERAL ALLEGATIONS

25.    Plaintiffs incorporate by reference the previous paragraphs of the Complaint as if set forth fully herein.

### The Lure of Decedents Kevin George, Jr. and Zion George to
### South Bowers Beach

26.    Born July 25, 1988, Kevin George, Jr., decedent, was thirty-one (31) years old on June 30, 2020.

27.    Born June 17, 2000, Zion George, Jr., decedent, was twenty (20) years old on June 30, 2020.

28.    On June 30, 2020, plaintiff's decedent Kevin George, Jr. and Destiny Deluca viewed an online website advertising Bowers Beach located in the State of Delaware.

29.    The online website advertisement viewed by plaintiff's decedent Kevin George, Jr. and Destiny Deluca characterized Bowers Beach as a choice beach vacation destination.

30.    Bowers Beach is beach located in Kent County, Delaware, situated on the Delaware Bay north

of the Murderkill River.

31.      South Bowers Beach is located in Kent County, Delaware, situated on the Delaware Bay south

of the Murderkill River.



MAP DEPICTING THE MURDERKILL RIVER, SOUTH BOWERS BEACH, AND
THE DELAWARE BAY

32.      On June 30, 2020, attracted by and relying upon the website advertising Bowers Beach as a

choice beach vacation destination, plaintiff's decedents Kevin George, Jr., and Zion George, along with Destiny

DeLuca and Amir Harris drove from Philadelphia, PA to enjoy the Bowers Beach environment.

33.      On or about June 30, 2020, plaintiff's decedents Kevin George, Jr. and Zion George, along

with Destiny DeLuca, and Amir Harris relied upon Global Positioning System (GPS) to guide their travel to

from Philadelphia, PA to Bowers Beach.

34.      Relying upon the Global Positioning System (GPS), plaintiff's decedents Kevin George, Jr.

and Zion George, along with Destiny DeLuca, and Amir Harris were guided to South Bowers Beach.

35.      On June 30, 2020, at or about 2:00 p.m., plaintiff's decedents Kevin George, Jr. and Zion

George, along with Destiny DeLuca, and Amir Harris arrived in the vicinity of South Bowers Beach.

36.      Upon arrival in the vicinity of South Bowers Beach, plaintiff's decedents Kevin George, Jr.

and Zion George, along with Destiny DeLuca, and Amir Harris selected a location on South Bowers Beach, set

their beach gear on the beach, and prepared to enjoy the day.

37.     On June 30, 2020, South Bowers Beach presented as a well-groomed and well-maintained public beach.

38.     On June 30, 2020, no signs providing a warning or notice that South Bowers Beach was closed to the public were posted in a conspicuous place in or around the vicinity of South Bowers Beach.

39.     On June 30, 2020, no signs providing a warning or notice that swimming was not permitted at the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach were posted in a conspicuous place in or around the vicinity of South Bowers Beach.

40.     On June 30, 2020, no signs providing a warning or notice that, due to the variance in velocity of the water's current during the tide change caused by dredging and jetty construction operations, swimming was hazardous at the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach were posted in a conspicuous place in or around the vicinity of South Bowers Beach.

41.     On June 30, 2020, no signs providing a warning or notice to any known dangerous condition of the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach were posted in a conspicuous place in the vicinity or on South Bowers Beach.

**<u>Murderkill River Facts</u>**

42.     The Murderkill River is a river located in the state of Delaware flowing towards and emptying into the Delaware Bay.

43.     The Murderkill River is tidally influenced from its mouth and upstream to just past the Town of Frederica, Delaware.

44.     The Murderkill River is considered by the U.S. Army Corps of Engineers to be navigable for the lower 10 miles (16 km) of its course.

45.     The Murderkill River entrance channel along Delaware Bay is roughly funnel shaped over

a large part of its domain.

**Permits Issued Authorizing Dredging, Beach Nourishment, And Jetty Rehabilitation of**
**The Channel Leading into The Murderkill River, Bowers Beach, Delaware**

46.     In the calendar year of 1968, the defendant DNREC undertook state-managed dredging operations of five (5) inland channels, including the Murderkill River estuary entrance channel along Delaware Bay, in Delaware, which over time developed into a comprehensive waterway management program.

47.     In or around the calendar year 2013, the Defendant DNREC sought to undertake maintenance dredging, beach nourishment, jetty rehabilitation projects in the Delaware Bay at Bowers Beach / South Bowers, Kent County, Delaware.

48.     Maintenance dredging, beach nourishment, jetty rehabilitation projects in the State of Delaware are regulated by the U.S. Army Corps of Engineers, (Philadelphia or Baltimore District) and defendant DNREC.

49.     The regulatory programs of both Federal and State agencies required that defendant DNREC obtain permit approval before undertaking maintenance dredging, beach nourishment, jetty rehabilitation projects in the Delaware Bay at Bowers Beach / South Bowers, Kent County, Delaware.

50.     Defendant DNREC retained defendant Andrews, Miller & Associates, Inc. to provide professional services and prepare proposed plans, drawings, contract documents and technical specifications for the maintenance dredging, beach nourishment, jetty rehabilitation projects in the Delaware Bay at Bowers Beach / South Bowers, Kent County, Delaware.

51.     Defendant DNREC identified the maintenance dredging and beach nourishment project in the Delaware Bay at Bowers Beach / South Bowers, Kent County, Delaware as Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDGE

52.     Defendant DNREC identified the jetty rehabilitation projects in the Delaware Bay at Bowers

Beach / South Bowers, Kent County, Delaware as the Murderkill River North Jetty Rehabilitation Extension Contract Number NAT-201311/NJETTY-REHAB.

53.     In or about August 2013, defendant Andrews, Miller & Associates, Inc. developed proposed plans and drawings for the maintenance dredging, beach nourishment, jetty rehabilitation in the Delaware Bay at Bowers Beach / South Bowers, Kent County, Delaware.

54.     In or about November 2013, defendant Andrews, Miller & Associates, Inc. developed revised proposed plans and drawings for the maintenance dredging, beach nourishment, jetty rehabilitation in the Delaware Bay at Bowers Beach / South Bowers, Kent County, Delaware.

55.     The November 2013, revised proposed plans and drawings for the maintenance dredging, beach nourishment, jetty rehabilitation in the Delaware Bay at Bowers Beach / South Bowers, Kent County, Delaware developed by defendant Andrews, Miller & Associates, Inc. contemplated the latent dangers which submerged portions of the extended jetty presented to unsuspecting persons.

56.     The revised proposed plans and drawings for the maintenance dredging, beach nourishment, jetty rehabilitation projects in the Delaware Bay at Bowers Beach / South Bowers, Kent County, Delaware dated November 2013, developed by defendant Andrews, Miller & Associates, Inc. required the placement of a steel piling at the waterward end with warning signals to protect against the foreseeable latent dangers which submerged portions of the extended jetty presented to unsuspecting persons.

57.     The revised proposed plans and drawings for the maintenance dredging, beach nourishment, jetty rehabilitation projects in the Delaware Bay at Bowers Beach / South Bowers, Kent County, Delaware dated November 2013, developed by defendant Andrews, Miller & Associates, Inc. did not contemplate that the dredging and jetty construction projects would result in a change to the tidal flows of the Murderkill River which presented a latent dangerous condition to recreational swimmers.

58.     The revised proposed plans and drawings for the maintenance dredging, beach nourishment,

jetty rehabilitation projects in the Delaware Bay at Bowers Beach / South Bowers, Kent County, Delaware dated November 2013, developed by defendant Andrews, Miller & Associates, Inc. did not include a specification that local municipalities, agencies, officials and policymakers be provided notice and warning that the dredging and jetty construction projects would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers.

59.     The revised proposed plans and drawings for the maintenance dredging, beach nourishment, jetty rehabilitation projects in the Delaware Bay at Bowers Beach / South Bowers, Kent County, Delaware dated November 2013, developed by defendant Andrews, Miller & Associates, Inc. did not include a specification requiring the posting of a sign or warning signals to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the dredging and jetty construction projects.

60.     Defendant DNREC applied to the DNREC - Division of Water Resources, Wetlands and Subaqueous Lands Section for the issuance of a permit to undertake hydraulic maintenance dredging of the authorized federal navigation channel at the mouth of the Murderkill River; conduct beach nourishment activities on the shoreline of South Bowers Beach; and widen, lengthen and raise the elevation of the north Murderkill River entrance jetty and submitted the November 2013 revised proposed plans and drawings developed by Andrews, Miller & Associates, Inc. in support of the application for permit.

61.     The DNREC – Division of Water Resources, Wetlands and Subaqueous Lands Section received and reviewed Defendant DNREC's application, November 2013 revised proposed plans and drawings developed by Andrews, Miller & Associates, Inc., and supporting papers.

62.     Defendant Sarah W. Cookey reviewed and approved the November 2013 revised proposed plans and drawings developed by Andrews, Miller & Associates, Inc. for the undertaking of dredging and jetty construction projects.

63.     On or about November 26, 2013, the DNREC – Division of Water issued Subaqueous Lands Permit number 297/13 to the defendant DNREC.

64.     Subaqueous Lands Permit number 297/13 authorized the defendant DNREC to conduct hydraulic maintenance dredging of the authorized federal navigation channel at the mouth of the Murderkill River; conduct beach nourishment activities on the shoreline of South Bowers Beach; and widen, lengthen and raise the elevation of the north Murderkill River entrance jetty consistent with the November 2013 revised proposed plans and drawings developed by Andrews, Miller & Associates, Inc.

65.     Subaqueous Lands Permit number 297/13 issued to the defendant DNREC by the DNREC – Division of Water did not contemplate that the dredging and jetty construction projects would result in a change to the tidal flows of the Murderkill River which presented a latent dangerous condition to recreational swimmers.

66.     Subaqueous Lands Permit number 297/13 issued to the defendant DNREC by the DNREC – Division of Water did not include a permit condition that permitee defendant DNREC provide notice and warning to local municipalities, agencies, officials and policymakers that the dredging and jetty construction projects would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers.

67.     Subaqueous Lands Permit number 297/13 issued to the defendant DNREC by the DNREC – Division of Water did not include a permit condition that permitee defendant DNREC require the posting of a sign or warning signals to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the dredging and jetty construction projects.

68.     Defendant DNREC applied to the Department of the Army, U.S. Army Corps of Engineers, Philadelphia District for the issuance of a permit to undertake hydraulic maintenance dredging of the authorized federal navigation channel at the mouth of the Murderkill River; conduct beach nourishment activities on the shoreline of South Bowers Beach; and widen, lengthen and raise the elevation of the north Murderkill River

17

entrance jetty and submitted the November 2013 revised proposed plans and drawings developed by Andrews, Miller & Associates, Inc. in support of the application for permit.

69.     The Army, U.S. Army Corps of Engineers, Philadelphia District received and reviewed defendant DNREC's application and supporting papers.

70.     Defendants Frank J. Cianfrani and John C. Beckering, PE, approved the November 2013 revised proposed plans and drawings developed by Andrews, Miller & Associates, Inc. for the undertaking of dredging and jetty construction projects.

71.     On or about December 6, 2013, Department of the Army, U.S. Army Corps of Engineers, Philadelphia District, by and through defendants Frank J. Cianfrani and John C. Beckering, PE, issued permit number CENAP-OP-R-2013-1033-23 to the defendant DNREC.

72.     Permit number CENAP-OP-R-2013-1033-23 authorized the defendant DNREC to conduct hydraulic maintenance dredging of the authorized federal navigation channel at the mouth of the Murderkill River; conduct beach nourishment activities on the shoreline of South Bowers Beach; and widen, lengthen and raise the elevation of the north Murderkill River entrance jetty consistent with the November 2013 revised proposed plans and drawings developed by Andrews, Miller & Associates, Inc.

73.     Permit number CENAP-OP-R-2013-1033-23 issued to the defendant DNREC by the Department of the Army, U.S. Army Corps of Engineers, Philadelphia District did not contemplate that the dredging and jetty construction projects would result in a change to the tidal flows of the Murderkill River which presented a latent dangerous condition to recreational swimmers.

74.     Permit number CENAP-OP-R-2013-1033-23 issued to the defendant DNREC by the Department of the Army, U.S. Army Corps of Engineers, Philadelphia District, did not include a permit condition that permitee defendant DNREC provide notice and warning to local municipalities, agencies, officials and policymakers that the dredging and jetty construction projects would result in a change to the tidal

flows of the Murderkill River which presented a dangerous condition to recreational swimmers.

75.     Permit number CENAP-OP-R-2013-1033-23 issued to the defendant DNREC by the Department of the Army, U.S. Army Corps of Engineers, Philadelphia District,  did not include a permit condition that permitee defendant DNREC require the posting of  a sign or warning signals to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the dredging and jetty construction projects.

### Defendant Manson Construction Company's Dredging of The Murderkill River Estuary Entrance Channel in the Calendar Year 2014

76.     On or about October 4, 2013, defendant Andrews, Miller & Associates, Inc. developed Contract Documents and Specifications in connection with Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDGE.

77.     The Contract Documents and Specifications in connection with Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDGE did not contemplate that the dredging operation  would result in a change to the tidal flows of the Murderkill River which presented a latent dangerous condition to recreational swimmers.

78.     The Contract Documents and Specifications in connection with Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDGE did not include a requirement that the contractor provide notice and warning to local municipalities, agencies, officials and policymakers that the dredging operation would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers.

79.     The Contract Documents and Specifications in connection with Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDGE did not include a requirement that the contractor post a sign or warning signals to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the dredging operation.

80.    The Contract Documents and Specifications in connection with Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDGE dated October 4, 2013, developed by Andrews, Miller & Associates, Inc. were received, reviewed and approved by defendant DNREC.

81.    On or about December 18, 2013, defendant DNREC and defendant Manson Construction Company entered into Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDGE.

82.    Pursuant to the terms of Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDGE, during the time period of January 26, 2014 through February 18, 2014, defendant Manson Construction Company hydraulically dredged the Murderkill River entrance channel to a depth of eight (8) feet below mean lower low water (MLLW) removing 45,000 cubic yards of dredged material from a 60 x 5,839 foot section.

83.    Defendant Andrews, Miller & Associates oversaw and managed defendant Manson Construction Company's prosecution of the scope of work detailed in Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDGE.

84.    Defendant DNREC oversaw and managed defendant Manson Construction Company's prosecution of the scope of work detailed in Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDGE.

85.    Defendant DNREC performed on-site inspection of the work prosecuted by defendant Manson Construction Company and confirmed defendant Manson Construction Company's compliance with the terms and conditions of the Murderkill River Maintenance Dredging and Beach Nourishment project near Bowers Beach, Delaware Contract No. NAT201301 – HYD.DREDGE.

86.    Defendant Manson Construction Company performed a post-dredging bathymetric survey of the dredging site upon its completion of the dredging detailed in Murderkill River Dredging and Beach

Nourishment Contract No. NAT201301 – HYD.DREDGE.

87.     Defendant DNREC performed a post-dredging bathymetric survey of the dredging site within sixty (60) days of defendant Manson Construction Company's completion of the dredging detailed in Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDGE.

88.     The dredging operation undertaken by defendant Manson Construction during the time period of January 26, 2014 through February 18, 2014, significantly altered the physics of the Murderkill River entrance channel of the Delaware Bay and caused the velocity of the movement of the water during tide change to be amplified at the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach.

89.     The increased velocity of the water's current realized at the Murderkill River near the entrance channel of the Delaware Bay during the tide change as a result of defendant Manson Construction's 2014 dredging operation created a dangerous and unreasonable hazard to unsuspecting recreational swimmers in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach.

**Defendant Kingfisher Environmental Services, Inc.'s Jetty Construction And Restoration Project in The Calendar Years 2015-2016**

90.     Defendant DNREC retained Andrews, Miller & Associates, Inc. to provide professional services and prepare Contract Documents and Specifications in connection with Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

91.     On or about March 18, 2015, defendant Andrews, Miller & Associates, Inc. developed Contract Documents and Specifications in connection with Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

92.     The Contract Documents and Specifications in connection with Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB did not contemplate that the jetty construction project would result in a change to the tidal flows of the Murderkill River which presented a latent

21

dangerous condition to recreational swimmers.

93.      The Contract Documents and Specifications in connection with Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB did not include a requirement that the contractor provide notice and warning to local municipalities, agencies, officials and policymakers that the jetty construction project would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers.

94.      The Contract Documents and Specifications in connection with Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB did not include a requirement that the contractor post a sign or warning signals to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the jetty construction projects.

95.      The Contract Documents and Specifications in connection with Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB dated March 18, 2015, developed by Andrews, Miller & Associates, Inc. were received, reviewed and approved by Defendant DNREC.

96.      On or about May 20, 2015, Defendant DNREC and defendant Kingfisher Environmental Services, Inc. entered into Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

97.      Pursuant to the terms of Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB, during the time period of June 18, 2015 through February 13, 2016 defendant Kingfisher Environmental Services, Inc. rehabilitated the jetty, located north of  the mouth of the Murderkill River, with quarry-stone, 58 foot wide x  470 foot long,  with approximately 300 linear feet channelward of the

mean high water line (MHWL) on the northern mouth of the Murderkill River and installed a steel pile with a warning sign at the end of the jetty.



STEEL PILING WITH AN ATTACHED WARNING SIGN PLACED AT THE WATERWARD END OF THE BOWERS BEACH EXTENDED JETTY

98.     Defendant Andrews, Miller & Associates oversaw and managed defendant Kingfisher Environmental Services, Inc.'s prosecution of the scope of work detailed in Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

99.     Defendant DNREC oversaw and managed defendant Kingfisher Environmental Services, Inc.'s prosecution of the scope of work detailed in Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

100.     Defendant DNREC performed on-site inspection of the work prosecuted by defendant Kingfisher Environmental Services, Inc. and confirmed defendant Kingfisher Environmental Services, Inc.'s compliance with the terms and conditions of the project Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

101.     The jetty construction project undertaken by defendant Kingfisher Environmental Services, Inc. during the time period of June 18, 2015 through February 13, 2016, significantly altered the physics of the Murderkill River entrance channel of the Delaware Bay and caused the velocity of the movement of the water

during tide change to be amplified at the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach.

102.    The increased velocity of the water's current realized at the Murderkill River near the entrance channel of the Delaware Bay during the tide change as a result of defendant Kingfisher Environmental Services, Inc.'s jetty construction project created a dangerous and unreasonable hazard to unsuspecting recreational swimmers in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach.

### The June 30, 2020, Drowning Deaths of Decedents
### Kevin George, Jr. and Zion George

103.    On June 30, 2020, at or about 2:47 p.m., the Murderkill River estuary channel at the mouth of the Delaware Bay abutting South Bowers Beach presented, what appeared, to the unsuspecting beach goer as calm water safe for recreational swimming.

104.    On June 30, 2020, at or about 2:47 p.m., the Murderkill River estuary channel at the mouth of the Delaware Bay and the Murderkill River abutting South Bowers Beach presented no visible signs of danger.

105.    On June 30, 2020, at or about 2:47 p.m., Kevin George, Jr., Zion George, Jr., and Amir Harris entered the intertidal of the Delaware Bay at South Bowers Beach in a location south of the sand bar jetty appearing at the Murderkill River's mouth of the Delaware Bay and swam in the northbound direction to the shallower waters of the sand bar jetty.

106.    On June 30, 2020, at or about 2:47 p.m., Kevin George, Jr., Zion George, Jr., and Amir Harris reached the sand bar jetty at the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach.

107.    On June 30, 2020, at or about 2:47 p.m., unsuspecting of any danger and with the intent to leisurely swim in the water Kevin George, Jr., Zion George, Jr., and Amir Harris continued north of the sand bar jetty and into the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach.

108.     Mr. Michael Hignutt, the Assistant Chief of South Bowers Beach Fire Company, along with Mr. Timothy Smith, were fishing from the bank of the Murderkill River in the area of the west of the sand bar near the entrance channel of the Delaware Bay and observed the three (3) men enter the water of the Murderkill River.

109.     Upon entering the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach, Kevin George, Jr., Zion George, Jr., and Amir Harris unexpectedly found the shallower water of the sand bar jetty suddenly drop-off at an underwater ledge to a depth of water descending to some excess of some eight (8) feet.

110.     As a result of the sudden drop-off of the depth of the water of the Murderkill River, Kevin George, Jr., Zion George, Jr., and Amir Harris found themselves unexpectedly in a water depth over their heads with their bodies being pulled under the water and into the Murderkill River away from the shoreline by the strength of the tidal current.

111.     Kevin George, Jr., Zion George, Jr., and Amir Harris screamed in distress as they struggled to surface against the force of the tide of the Murderkill River which pulled their bodies under the water's surface and away from the shoreline.

112.     Destiny Deluca heard Kevin George, Jr., Zion George, Jr., and Amir Harris screaming in distress from her location on the beach.

113.     In a state of hysteria, Destiny Deluca ran from her location on the beach in the direction of the sand bar jetty and entered the water of the Murderkill River near the entrance channel of the Delaware Bay with an intent to rescue Kevin George, Jr., Zion George, Jr., and Amir Harris.

114.     The strong tidal current immediately pulled Destiny Deluca's body under the surface of the water and into the Murderkill River away from the shoreline.

115.     Destiny Deluca, soon fatigued, found herself struggling to save herself from drowning.

116.     Amir Harris was able to reach the shoreline and save himself from drowning where he was attended to by Firefighter Michael Hignutt.

117.     Destiny Deluca was able to reach the shoreline and save herself from drowning where she was attended to by Firefighter Michael Hignutt.

118.     On June 30, 2020, a six (6) hour search mission for Kevin George, Jr., and Zion George, Jr. spanning the time of 3:00 p.m. to 9:00 p.m. was undertaken by multiple police, fire, maritime and paramedic agencies that responded to the area.

119.     The search mission undertaken June 30, 2020, was called off by authorities due to darkness.

120.     On the morning of July 1, 2020, the search and recovery mission resumed morning, with brothers Kevin George, Jr., and Zion George, Jr. presumed dead.

121.     On  July 1, 2020, at 10:30 a.m., searchers found the bodies of Kevin George, Jr. and Zion George in the Murderkill River close to where they had been last seen in the water.

## SURVIVORS OF DECEDENTS KEVIN GEORGE, JR AND ZION GEORGE

122.     Plaintiff Anterine Maple incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

123.     Decedent Kevin George, Jr.  has left the following beneficiaries surviving him:

　　　　(a)     Plaintiff Anterine Maple, parent;

　　　　(b)     Kevin George, Sr., parent

124.     Decedent Zion George has left the following beneficiaries surviving him:

　　　　(a)     S.Z., a minor;

　　　　(b)     Plaintiff Anterine Maple, parent;

　　　　(c)     Kevin George, Sr., parent

125.     There have been no actions brought by the plaintiff's decedents during their lifetime upon the

allegations set forth within the body of this Complaint.

## FIRST CAUSES OF ACTION - WRONGFUL DEATH

### COUNT I
### VIOLATIONS OF CIVIL RIGHTS - 42 U.S.C.A. § 1983
### SUBSTANTIVE DUE PROCESS – FOURTEENTH AMENDMENT
### (Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George, deceased v Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey)

### State Created Theory of Liability – Individual Direct Liability

126.    Plaintiff Anterine Maple incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

127.    Plaintiff Anterine Maple advances this wrongful death action on behalf of the survivors of the decedents by virtue of Delaware Code, Title 10 §§ 3721 to 3725 [relating to Wrongful Death Actions].

128.    This civil action is advanced to recover on behalf of statutory beneficiaries all damages recoverable under the Delaware Wrongful Death Act.

129.    At all material times relevant to the subject matter described in this Complaint, the Fourteenth Amendment of the United States Constitution conferred upon the plaintiff's decedents a substantive due process right to be free of government officials' deliberate indifference to, or acts that increase the risk of serious injury or death from unjustified invasions of bodily integrity.

130.    At all material times relevant to the subject matter described in this Complaint, the Fourteenth Amendment of the United States Constitution conferred upon the plaintiff's decedents a substantive due process right to the affirmative intervention by state actors to minimize the risk of drowning.

131.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey  were persons within the meaning of 42 U.S.C.A. § 1983.

132.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey acted under the color of state law.

133.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey owed plaintiff's decedents a statutory duty pursuant to 42 U.S.C.A. § 1983 to act in a manner to safeguard rights of the plaintiff's decedents secured by the United States Constitution.

134.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey affirmatively used their authority to cause the scope of work detailed in Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDGE, to be undertaken during the time period of January 26, 2014 through February 18, 2014.

135.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey affirmatively used their authority to cause the scope of work detailed in Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB, to be undertaken during the time period of June 18, 2015 through February 13, 2016.

136.    The dredging operations of the Murderkill River estuary entrance channel along Delaware Bay undertaken in the calendar years of 2014 significantly changed the status quo of the bathymetry of the Murderkill River estuary entrance channel along Delaware Bay creating a hazard to recreational swimmers, such as the plaintiff's decedents, or rendered them more vulnerable to danger than had the dredging operation not been undertaken at all.

137.     The jetty construction north of the Murderkill River estuary entrance channel along Delaware Bay undertaken in the calendar years of 2015-2016 significantly changed the status quo of the bathymetry of the Murderkill River estuary entrance channel along Delaware Bay creating a hazard to recreational swimmers, such as the plaintiff's decedents, or rendered them more vulnerable to danger than had the jetty construction not been undertaken at all.

138.     At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew or reasonably should have known the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach would be used for recreational activities, inclusive of swimming, during tide changes upon completion of the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

139.     At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew or reasonably should have known the aforementioned dredging operation and jetty construction projects would alter the tidal force, amplify the velocity of the movement of water during tide change in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach, and create a dangerous and unreasonable hazard to unsuspecting recreational swimmers, such as the plaintiff's decedents, at South Bowers Beach.

140.     At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew or reasonably should have known the aforementioned dredging operation and jetty construction projects created a hazard to

recreational swimmers in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach.

141.    The plaintiff's decedents were members of a discrete class of persons subjected to the potential harm brought about by the aforementioned dredging operation and jetty construction projects upon the basis:

(a)    The plaintiff's decedents were members of a small, defined group of potential victims, unsuspecting day-vacation recreational swimmers swimming in the immediate area of the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach during tidal change;

(b)    It reasonably could be expected of the defendants to know that the dredging of the Murderkill River estuary channel and construction/rehabilitation of the north jetty created a danger specific to unsuspecting recreational swimmers swimming in the immediate location of the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach, such as the plaintiff's decedents;

(c)    The dangers presented by the amplified tidal force created by the dredging of the Murderkill River estuary channel  and construction/rehabilitation of the north jetty jeopardized the safety of only unsuspecting recreational swimmers, such as the plaintiff's decedents, swimming in the immediate location of the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach;

(d)    The dangers presented by the amplified tidal force created by the dredging of the Murderkill River estuary channel and construction/rehabilitation of the north jetty was limited in scope of time;

(e)    The dangers presented by the amplified tidal force created by the dredging of the Murderkill River estuary channel and construction/rehabilitation of the north jetty was limited in scope of geographic locale;

(f)    The drowning of unsuspecting recreational swimmers, such as the plaintiff's decedents, was predictable and reasonably foreseeable;

(g)    The plaintiff's decedents, as day-vacation recreational swimmers, were part of a limited and specifically definable group.

142.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew or reasonably should have known that the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach would be used for recreational activities, inclusive of recreational swimming during tide changes.

143.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew or reasonably should have known that Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach was an unguarded beach and swimming area.

144.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew or reasonably should have suspected that day-vacationers, such as the plaintiff's decedents, would not discover or realize the dangerous and unreasonable risk of harm which the tidal force at Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach presented to recreational swimmers at South Bowers Beach.

145.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew or reasonably should have known that it was practically certain that recreational swimmers at Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach, such as the plaintiff's decedents, would suffer harm, injury, or death by drowning as a result of the aforementioned dredging operation and jetty construction project.

146.     As a direct and proximate result of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey's exercise of executive power which resulted in the undertaking of the aforementioned dredging operation and jetty construction project, plaintiff's decedents were caused to suffer a violation of substantive due process rights as protected by the Fourteenth Amendment of the United States Constitution.

147.     As a direct and proximate result of the above-described affirmative action of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey's exercise of executive power, plaintiff Anterine Maple has been caused to incur funeral, burial, and estate administration expenses associated with the death of the decedents.

148.     As a direct and proximate result of the above described affirmative action of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey's exercise of executive power, plaintiff Anterine Maple and wrongful death beneficiaries were caused to suffer the loss of any contribution she and the remaining family of the decedents would have received from the decedents but for their deaths, including amounts of money for such items as shelter, food, clothing, medical care, education, entertainment, gifts and recreation.

149.     As a direct and proximate result of the above-described affirmative action of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey's exercise of executive power, plaintiff Anterine Maple and wrongful death beneficiaries were caused to suffer the loss of the monetary value of all sums that the decedents would have contributed to the support of her family during their reasonable life expectancy.

150.     As a direct and proximate result of the above-described affirmative action of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey's exercise of executive power, plaintiff Anterine Maple and wrongful death beneficiaries were caused to suffer the loss of the monetary

value associated with grief, mental anguish, the services of companionship, comfort, society, guidance, solace, love, affection, companionship, support, and protection that the decedents would have given to her and her family during their reasonable life expectancy.

151.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey acted with a degree of culpability that shocks the conscience of a reasonable person.

152.    The aforementioned actions of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey were outrageous, extreme, beyond all possible bounds of decency, and are to be regarded as intolerable in a civilized community.

153.    As a direct and proximate result of the above-described affirmative action of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey the plaintiff Anterine Maple has been caused to incur attorney's fees and costs prosecuting this matter.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George prays for judgment against defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey, jointly and severally, and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven;

II.     That plaintiff be awarded reasonable attorney's fees as provided for pursuant to 42 U.S.C.A. § 1988;

III.    That plaintiff be awarded the cost of prosecuting this claim as provided for pursuant to 42 U.S.C.A. § 1988;

IV.     That plaintiff be awarded reasonable expert fees as provided for pursuant to 42 U.S.C.A. § 1988;

V.      That plaintiff be awarded interest and damages for prejudgment delay;

VI.     That plaintiff be awarded further relief as this Court may deem appropriate.

### COUNT II
### VIOLATIONS OF CIVIL RIGHTS - 42 U.S.C.A. § 1983
### SUBSTANTIVE DUE PROCESS – FOURTEENTH AMENDMENT
### (Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George, deceased v Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey)

### State Created Theory of Liability – Supervisory Liability

154.    Plaintiff Anterine Maple incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

155.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey, as employees of defendant DNREC, served as supervisors responsible to maintain policies, customs, practices and procedures in connection with subordinate employees facilitating the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay.

156.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey, as employees of defendant DNREC served as supervisors responsible to maintain policies, customs, practices and procedures in connection with the training and education of subordinate employees to equip them in  facilitating the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay.

157.    At all material times relevant to the subject matter described in this Complaint, the employee training and education policies of subordinates under which defendant DNREC operated were inadequate to equip subordinate employees to ensure that appropriate measures were taken to safeguard unsuspecting

recreational swimmers at South Bowers Beach from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay.

158.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew that the employee training and education policies of subordinates under which defendant DNREC operated were inadequate to equip subordinate employees to ensure that appropriate measures were taken to safeguard unsuspecting recreational swimmers at South Bowers Beach from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay.

159.    Defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey made a deliberate and conscious choice not to take reasonable measures to improve the employee training and education policies of subordinates under which defendant DNREC operated to ensure that subordinate employees were sufficiently equipped to undertake appropriate measures to safeguard unsuspecting recreational swimmers at South Bowers Beach from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay.

160.    With a deliberate indifference to the constitutional rights of the plaintiff's decedents, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey failed to train and educate subordinate employees sufficient to ensure that appropriate measures were taken to safeguard unsuspecting recreational swimmers at South Bowers Beach from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay.

161.    With a deliberate indifference to the constitutional rights of the plaintiff's decedents, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey failed to supervise subordinate employees sufficient to ensure that appropriate measures were taken to safeguard unsuspecting

recreational swimmers at South Bowers Beach from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay.

162.     As a direct and proximate result of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey's deliberate and conscious choice not to take reasonable measures to train, educate, and supervise subordinate employees sufficient to ensure that appropriate measures were taken to safeguard unsuspecting recreational swimmers at South Bowers Beach from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay, plaintiff's decedents were caused to suffer a violation of substantive due process rights as protected by the Fourteenth Amendment of the United States Constitution.

163.     As a direct and proximate result of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey's deliberate and conscious choice not to take reasonable measures to train, educate, and supervise subordinate employees sufficient to ensure that appropriate measures were taken to safeguard unsuspecting recreational swimmers at South Bowers Beach from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay, plaintiff Anterine Maple and wrongful death beneficiaries were caused to suffer those various injuries and loss and expenses as set forth above.

164.     As a direct and proximate result of the above-described affirmative action of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey, the plaintiff Anterine Maple has been caused to incur attorney's fees and costs prosecuting this matter.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George prays for judgment against defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey, jointly and severally, and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven;

II.     That plaintiff be awarded reasonable attorney's fees as provided for pursuant to 42 U.S.C.A. §

1988;

III.    That plaintiff be awarded the cost of prosecuting this claim as provided for pursuant to 42

U.S.C.A. § 1988;

IV.     That plaintiff be awarded reasonable expert fees as provided for pursuant to 42 U.S.C.A. §

1988;

V.      That plaintiff be awarded interest and damages for prejudgment delay;

VI.     That plaintiff be awarded further relief as this Court may deem appropriate.


## COUNT III
## VIOLATIONS OF CIVIL RIGHTS - 42 U.S.C.A. § 1983
## SUBSTANTIVE DUE PROCESS – FOURTEENTH AMENDMENT
## (Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased, and the
## Estate of Zion George, deceased v Frank M. Piorko, Charles E. Williams, II, Daniel J.
## Brower, and Sarah W. Cookey)

### Failure to Warn Theory of Liability – Individual Direct Liability

165.    Plaintiff Anterine Maple incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

166.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew or reasonably should have known that South Bowers Beach near the Murderkill River estuary and the Murderkill River was an unguarded beach and swimming area.

167.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew or reasonably should have suspected that day-vacationers, such as the plaintiff's decedents, would not discover or realize the

dangerous and unreasonable risk of harm which the tidal force at South Bowers Beach near the Murderkill River estuary and the Murderkill River presented to recreational swimmers at South Bowers Beach.

168.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew or reasonably should have known that, upon completion of the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB, it was practically certain that drownings of recreational swimmers would result at South Bowers Beach in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary and the Murderkill River alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

169.    At all material times it was apparent that there was an imminent likelihood that drownings of recreational swimmers at South Bowers Beach and the Murderkill River would occur in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

170.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey had the ability and where-with-all to provide effective warnings to foreseeable unsuspecting recreational swimmers on South Bowers Beach and the Murderkill River of the dangerous and unreasonable risk of harm which the tidal force at South Bowers Beach near the Murderkill River estuary presented to recreational swimmers sufficient to prevent drowning events.

171.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey acted under circumstances in which actual deliberation was possible.

172.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey arbitrarily and with a reckless indifference to the protected rights of the plaintiff's decedents, chose to take no action sufficient to notify recreational swimmers at South Bowers Beach and the Murderkill River that the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay created a latent hazard to recreational swimmers at South Bowers Beach.

173.    Choosing to take no action sufficient to notify recreational swimmers at South Bowers Beach that the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay created a latent hazard to recreational swimmers at South Bowers Beach and the Murderkill River, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey acted with an indifference to the foreseeable of consequence that recreational swimmers would suffer drownings at South Bowers Beach and in the Murderkill River.

174.    Choosing to take no action sufficient to ensure recreational swimmers at South Bowers Beach that the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay created a latent hazard to recreational swimmers at South Bowers Beach and the Murderkill River during tidal changes,  defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey  acted  with sustained recklessness in the face of an obvious risk of harm to foreseeable recreational swimmers at South Bowers Beach and the Murderkill River during tidal changes.

175.    Defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey demonstrated a persistent marked disregard for the safety of recreational swimmers in choosing to take no action sufficient to notify recreational swimmers at South Bowers Beach and the Murderkill River that the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay created a latent hazard to recreational swimmers at South Bowers Beach and the Murderkill River during tidal changes.

176.    Defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey were grossly negligent choosing to take no action sufficient to notify recreational swimmers at South Bowers Beach and the Murderkill River that the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay created a latent hazard to recreational swimmers at South Bowers Beach and the Murderkill River during tidal changes.

177.    As a direct and proximate result of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey's deliberate and conscious choice not to warn of the dangers sufficient to safeguard unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River during tidal changes from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay, plaintiff's decedents were caused to suffer a violation of substantive due process rights as protected by the Fourteenth Amendment of the United States Constitution.

178.    As a direct and proximate result of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey deliberate and conscious choice not to take reasonable measures to safeguard unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River during tidal changes from the latent dangers created by the aforementioned dredging and jetty construction projects of the

Murderkill River estuary entrance channel along Delaware Bay, plaintiff Anterine Maple and wrongful death beneficiaries were caused to suffer those various injuries, loss and expenses as set forth above.

179.     As a direct and proximate result of the above-described affirmative action of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey, the plaintiff Anterine Maple has been caused to incur attorney's fees and costs prosecuting this matter.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George prays for judgment against defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey, jointly and severally, and the relief which follows:

I.     That plaintiff be awarded compensatory damages as proven;

II.     That plaintiff be awarded reasonable attorney's fees as provided for pursuant to 42 U.S.C.A. § 1988;

III.     That plaintiff be awarded the cost of prosecuting this claim as provided for pursuant to 42 U.S.C.A. § 1988;

IV.     That plaintiff be awarded reasonable expert fees as provided for pursuant to 42 U.S.C.A. § 1988;

V.     That plaintiff be awarded interest and damages for prejudgment delay;

VI.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT IV
## VIOLATIONS OF CIVIL RIGHTS - 42 U.S.C.A. § 1983
## SUBSTANTIVE DUE PROCESS – FOURTEENTH AMENDMENT
## (Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George, deceased v Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey)

### Failure to Warn Theory of Liability – Supervisor Liability

180.    Plaintiff Anterine Maple incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

181.    At all material times relevant to the subject matter described in this Complaint, the employee training and education policies of subordinates under which defendant DNREC operated were inadequate to equip subordinate employees to warn of unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River during tidal changes from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay sufficient to prevent drowning deaths.

182.    At all material times relevant to the subject matter described in this Complaint, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew that the employee training and education policies of subordinates under which defendant operated were inadequate to equip subordinate employees to ensure that appropriate measures were taken to provide warning to unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River during tidal changes from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay sufficient to prevent drowning deaths.

183.    Defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey made a deliberate and conscious choice not to take reasonable measures to improve the employee training and education policies of subordinates under which defendant DNREC operated to ensure that subordinate employees were sufficiently equipped to undertake appropriate measures to provide warnings to

safeguard unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River during tidal changes from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay sufficient to prevent drowning deaths.

184.     With a deliberate indifference to the constitutional rights of the plaintiff's decedents, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey failed to train and educate subordinate employees sufficient to ensure that subordinates took appropriate measures to warn unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River during tidal changes from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay sufficient to prevent drowning deaths.

185.     With a deliberate indifference to the constitutional rights of the plaintiff's decedents, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey failed to supervise subordinate employees sufficient to ensure that subordinates took appropriate measures to warn unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River during tidal changes from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay sufficient to prevent drowning deaths.

186.     As a direct and proximate result of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey's deliberate and conscious choice not to take reasonable measures to train, educate, and supervise subordinate employees sufficient to ensure that subordinates took appropriate measures to warn unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River during tidal changes from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay to prevent drowning deaths, plaintiff's decedents were caused to suffer a violation of substantive due process rights as protected by the Fourteenth Amendment of the United States Constitution.

187.    As a direct and proximate result of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey's deliberate and conscious choice not to take reasonable measures to train, educate, and supervise subordinate employees sufficient to ensure that appropriate measures were taken to safeguard unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River during tidal changes from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay, plaintiff Anterine Maple and wrongful death beneficiaries were caused to suffer those various injuries and loss and expenses as set forth above.

188.    As a direct and proximate result of the above-described affirmative action of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey, the plaintiff Anterine Maple has been caused to incur attorney's fees and costs prosecuting this matter.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George prays for judgment against defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey, jointly and severally, and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven;

II.     That plaintiff be awarded reasonable attorney's fees as provided for pursuant to 42 U.S.C.A. § 1988;

III.    That plaintiff be awarded the cost of prosecuting this claim as provided for pursuant to 42 U.S.C.A. § 1988;

IV.     That plaintiff be awarded reasonable expert fees as provided for pursuant to 42 U.S.C.A. § 1988;

V.      That plaintiff be awarded interest and damages for prejudgment delay;

VI.    That plaintiff be awarded further relief as this Court may deem appropriate.

**COUNT V**
**DELAWARE TORT CLAIMS ACT – 10 DEL. C. § 4001**
**EXCEPTIONS TO SOVEREIGN IMMUNITY**
**(Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George, deceased v DNREC)**

189.    Plaintiff Anterine Maple incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

190.    At all relevant times material hereto, the oceanfront beach and shoreline of South Bowers Beach, located Kent County, Delaware extending landward one thousand (1,000) feet and seaward two thousand five hundred (2,500) feet (hereinafter "*South Bowers Beach*"), was public land owned by the state of Delaware.

191.    At all relevant times material hereto, the plaintiff's decedents were upon the beach as licensee guests without payment.

192.    At all relevant times material hereto, the plaintiff's decedents did not know of or have reason to know of the significant change in the velocity of the movement of water at the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach during tide change.

193.    At all relevant times material hereto, the plaintiff's decedents did not know of or have reason to know of the dangerous and unreasonable risk of harm which the significant change in the velocity of the movement of water at the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach presented to recreational swimmers at South Bowers Beach.

194.    At all relevant times material hereto, pursuant to the provisions of the Delaware Code, 7 Del. C. § 4504(a) [relating to Supervision and Control of Public Lands by Department of Natural Resources and Environmental Control; Public Beaches; Penalty] defendant DNREC was charged with the responsibility of supervising and controlling the care of the public lands.

195.     At all relevant times material hereto, pursuant to the provisions of the Delaware Code, 7 Del. C. § 4504(a) [relating to Supervision and Control of Public Lands by Department of Natural Resources and Environmental Control; Public Beaches; Penalty], defendant DNREC was charged with the responsibility of promoting, regulating the use of, and caring for the aforementioned public South Bowers Beach and the Murderkill River.

196.     At all relevant times material hereto, pursuant to the provisions of the Delaware Code, 7 Del. C. § 4509 [relating to Improvement of Public Lands], defendant DNREC was authorized to make improvements to and on any public lands within the State of Delaware, inclusive of South Bowers Beach and the Murderkill River.

197.     At all relevant times material hereto, pursuant to the provisions of the Delaware Code, 7 Del. C. § 6803 [relating to Authority to Enhance, Preserve and Protect Beaches] defendant DNREC was authorized to enhance, preserve, and protect public beaches and waterways within the State of Delaware, inclusive of South Bowers Beach, and the Murderkill River.

198.     At all relevant times material hereto, pursuant to the provisions of the Delaware Code, 7 Del. C. § 6804 [relating to Privately owned beaches] defendant DNREC was authorized to enhance, preserve, and protect private beaches and waterways within the State of Delaware, inclusive of South Bowers Beach, and the Murderkill River.

199.     At all relevant times material hereto, the public South Bowers Beach and the Murderkill River were applicable land under the jurisdiction of defendant DNREC within the meaning of the Delaware Administrative Code, 7 DE Admin. Code §§ 9201-2.1 and 9201-2.2

200.     At all relevant times material hereto, pursuant to the provisions of the Delaware Administrative Code, 7 DE Admin. Code §§ 9201-2.1 and 9201-2.2, defendant DNREC was charged with

responsibility to govern the use of all applicable lands, inclusive of South Bowers Beach and the Murderkill River.

201.    At all relevant times material hereto, pursuant to the provisions of the Delaware Administrative Code, 7 DE Admin. Code §§ 9201-2.1 and 9201-2.2, defendant DNREC was charged with responsibility to take action to ensure the safety, protection and general welfare of the visitors and personnel on properties under its jurisdiction, inclusive of South Bowers Beach and the Murderkill River.

202.    At all relevant times material hereto, defendant DNREC was vested with the responsibility to abate dangerous conditions of public lands, subaqueous lands, waterways, and certain private properties under its jurisdiction.

203.    Pursuant to the provisions of the Delaware Administrative Code, 7 DE Admin. Code §§ 9201-2.1 and 9201-2.2 defendant DNREC was authorized to implement the rules and regulations to ensure the safety, protection and general welfare of the visitors and personnel on properties and waterways under its jurisdiction.

204.    At all relevant times material hereto, pursuant to the provisions of the Delaware Administrative Code, 7 DE Admin. Code § 5102 – 4.6.1 [relating to Other Activities Seaward of the Building Line], defendant DNREC was charged with the responsibility of governing the alteration, digging, mining, moving, removal or deposition of any substantial amount of beach or other materials, which may affect enhancement, preservation or protection of beaches and waterways.

205.    At all relevant times material hereto, pursuant to the provisions of the Delaware Administrative Code, 7 DE Reg. § 5102 – 8.2.2 [relating to Violations and Penalties], defendant DNREC was charged with the responsibility of abating a public nuisance created by the alteration, digging, mining, moving, removal or deposition of any substantial amount of beach or other materials, which may affect enhancement, preservation or protection of beaches and waterways.

206.    At all relevant times material hereto, defendant DNREC was charged with the responsibility of supervising and controlling the care of waterways and subaqueous lands located within the State of Delaware, inclusive of the Murderkill River and South Bowers Beach.

207.    At all relevant times material hereto, defendant DNREC –was vested with broad discretion regarding the manner in which to warn the public of dangerous conditions of public lands, certain private lands, subaqueous lands and waterways under its jurisdiction, inclusive of South Bowers Beach and the Murderkill River.

208.    At all relevant times material hereto, defendant DNREC –was vested with broad discretion to abate dangerous conditions of public lands, certain private lands, subaqueous lands, and waterways under its jurisdiction, inclusive of South Bowers Beach and the Murderkill River.

209.    Defendant DNREC implemented various rules, regulations, and policies seeking to provide a safe and healthful environment for visitors, by reducing or removing known hazards and applying other appropriate measures, including closures, guarding, posting of signage, or other forms of education.

210.    At all relevant times material hereto, defendant DNREC was vested with broad discretion regarding the manner in which to warn the public of dangerous conditions of public lands, subaqueous lands, waterways, and certain private properties under its jurisdiction.

211.    At all relevant times material hereto, defendant DNREC knew or reasonably should have known that the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach would be used for recreational activities, inclusive of recreational swimming, during tide changes.

212.    At all relevant times material hereto, defendant DNREC knew or reasonably should have known that South Bowers Beach near the Murderkill River estuary and the Murderkill River was an unguarded beach and swimming area.

213.    At all relevant times material hereto, defendant DNREC knew or reasonably should have known that the velocity of the movement of water at the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach created a dangerous and unreasonable risk of harm to unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River.

214.    At all relevant times material hereto, defendant DNREC knew or reasonably should have suspected that vacationers, such as the plaintiff's decedents, would not discover or realize the dangerous and unreasonable risk of harm which the tidal force of the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach presented to recreational swimmers.

215.    At all material times defendant DNREC knew or reasonably should have known that it was practically certain that drownings of recreational swimmers would result in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

216.    At all material times it was apparent that there was an imminent likelihood that drownings of recreational swimmers in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach would occur in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

217.    At all material times defendant DNREC knew or reasonably should have known that the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach presented a dangerous condition of subaqueous lands and waterways during tidal changes.

49

218.    Defendant DNREC owed the plaintiff's decedents a statutory duty of care to take action to ensure the safety, protection and general welfare of the visitors and personnel on public lands, subaqueous lands, waterways, and certain private properties, under its jurisdiction.

219.    Defendant DNREC owed the plaintiff's decedents a common law duty of care to refrain from acting with gross or wanton negligence toward licensees on public lands, subaqueous lands, waterways, and certain private properties, under its jurisdiction.

220.    Defendant DNREC owed the plaintiff's decedents an assumed duty of care to refrain from acting with gross or wanton negligence toward licensees upon public lands, subaqueous lands, waterways, and certain private properties, under its jurisdiction.

221.    Defendant DNREC breached the duties of care owed the plaintiff's decedents, and remains liable within the meaning of the Delaware Code, 10 Del. C. § 4001, in the following, but not limited, ways:

(a)    Failed to ensure that Subaqueous Lands Permit number 297/13, authorizing the dredging and jetty construction projects, included a permit condition that the permitee provide notice and warning to local municipalities, agencies, officials and policymakers that the dredging and jetty construction projects would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers;

(b)    Failed to ensure that Subaqueous Lands Permit number 297/13, authorizing the dredging and jetty construction projects, included a permit condition that the permitee be required to post a sign or warning signals to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the dredging and jetty construction projects;

(c)    Failed to exercise reasonable care to make the dangerous condition of South Bowers Beach and the Murderkill River safe for expected use;

(d)    Failed to take reasonable measures to warn the licensees of the dangerous condition of South Bowers Beach and the Murderkill River;

(e)    Failed to take reasonable measures to warn the licensees of the risk involved in recreational swimming at South Bowers Beach and the Murderkill River;

(f)    Failed to post warning or notice signs prohibiting recreational swimming at or on South Bowers Beach and the Murderkill River during tidal changes;

(g)    Failed to take reasonable measures to ensure public safety on public lands, subaqueous lands, waterways, and certain private properties under its jurisdiction;

(h)    Failed to take reasonable measures to abate the dangerous condition existing on public lands, subaqueous lands, waterways, and certain private properties under its jurisdiction.

222.    As a direct and proximate result of the defendant DNREC – Parks and Recreation's grossly negligent and wanton acts, omissions or failures to act, plaintiff Anterine Maple and wrongful death beneficiaries have been caused to suffer those various injuries, loss and expenses as set forth above.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George prays for judgment against defendant DNREC – Parks and Recreation, jointly and severally, and the relief which follows:

I.    That plaintiff be awarded compensatory damages as proven at trial;

II.    That plaintiff be awarded interest and damages for prejudgment delay;

III.    That plaintiff be awarded further relief as this Court may deem appropriate.

**COUNT VI**
**DELAWARE TORT CLAIMS ACT – 10 DEL. C. § 4001**
**EXCEPTIONS TO SOVEREIGN IMMUNITY**
**(Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased and the Estate of Zion George, deceased v Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey)**

223.    Plaintiff Anterine Maple incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

224.    At all relevant times material hereto, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey were charged with the responsibility of promoting, regulating the use of, and caring for South Bowers Beach and the Murderkill River.

225.    At all relevant times material hereto, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey were charged with the responsibility to take action to ensure the safety, protection and general welfare of the visitors and personnel on South Bowers Beach and the Murderkill River.

226.    At all relevant times material hereto, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew or reasonably should have known that the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach would be used for recreational activities, inclusive of recreational swimming, during tide changes.

227.    At all relevant times material hereto, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew or reasonably should have known that South Bowers Beach near the Murderkill River estuary and the Murderkill River was an unguarded beach and swimming area.

228.    At all relevant times material hereto, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew or reasonably should have known that the velocity of the movement of water during tide change in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach created a dangerous and unreasonable risk of harm to unsuspecting recreational swimmers.

229.    At all relevant times material hereto, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew or reasonably should have suspected that day-vacationers, such as the plaintiff's decedents, would not discover or realize the dangerous and unreasonable risk of harm which the variance tidal force of the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach presented to recreational swimmers during tidal changes.

230.    At all relevant times material hereto, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey knew or reasonably should have known it was practically certain that drownings of recreational swimmers would result in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

231.    At all material times, it was apparent that there was an imminent likelihood that drownings of recreational swimmers in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach would occur in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

232.    Defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey owed the plaintiff's decedents a statutory duty of care to take action to ensure the safety, protection and general welfare of the visitors and personnel on public lands, subaqueous lands, waterways, and certain private properties under the jurisdiction of the DNREC, such as South Bowers Beach near the Murderkill River estuary.

233.    Defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey owed the plaintiff's decedents a common law duty of care to refrain from acting with gross or wanton

negligence toward licensees on public lands, subaqueous lands, waterways, and certain private properties under the jurisdiction of the DNREC, such as South Bowers Beach near the Murderkill River estuary.

234.    Defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey breached the duties of care owed to the plaintiff's decedents, and remain liable within the meaning of 10 Del. C. § 4001, in the following, but not limited, ways:

(a)    Failed to ensure that Subaqueous Lands Permit number 297/13, authorizing the dredging and jetty construction projects, included a permit condition that the permitee provide notice and warning to local municipalities, agencies, officials and policymakers that the dredging and jetty construction projects would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers;

(b)    Failed to ensure that Subaqueous Lands Permit number 297/13, authorizing the dredging and jetty construction projects, included a permit condition that the permitee be required to post a sign or warning signals to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the dredging and jetty construction projects;

(c)    Failed to exercise reasonable care to make the dangerous condition of South Bowers Beach and the Murderkill River safe for expected use;

(d)    Failed to take reasonable measures to warn the licensees of the dangerous condition of South Bowers Beach and the Murderkill River;

(e)    Failed to take reasonable measures to warn the licensees of the risk involved in recreational swimming at South Bowers Beach and the Murderkill River;

(f)    Failed to post warning or notice signs at or on South Bowers Beach and the Murderkill River prohibiting recreational swimming;

(g)    Failed to take reasonable measures to ensure public safety on public lands and waterways;

(h)    Failed to ensure that subordinate employees were sufficiently equipped to undertake appropriate measures to safeguard unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay;

(i)    Failed to train and educate subordinate employees sufficient to ensure that appropriate measures were taken to safeguard unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay;

(j)    Failed to supervise subordinate employees sufficient to ensure that appropriate measures were taken to safeguard unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay.

235.    As a direct and proximate result of the defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey's grossly negligent and wanton acts, omissions or failures to act, plaintiff Anterine Maple and wrongful death beneficiaries have been caused to suffer those various injuries, loss and expenses as set forth above.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George prays for judgment against defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey, jointly and severally, and the relief which follows:

I.    That plaintiff be awarded compensatory damages as proven;

II.      That plaintiff be awarded exemplary damages as proven;

III.     That plaintiff be awarded interest and damages for prejudgment delay;

IV.      That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT VII
### VIOLATION OF THE CONSTITUTION OF THE STATE OF DELAWARE
### (Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George, deceased v DNREC)

236.     Plaintiff Anterine Maple incorporates by reference the paragraphs above as if set forth herein in full.

237.     At all relevant times material hereto, the Preamble and Article 1, Sections 6 and 9 of the Constitution of the State of Delaware conferred upon the plaintiff's decedents a substantive right to personal security to be free from a government official's deliberate indifference to, or acts that increase the risk of serious injury or death from unjustified invasions of bodily integrity.

238.     At all relevant times material hereto, the Preamble and Article 1, Sections 6 and 9 of the Constitution of the State of Delaware conferred upon the plaintiff's decedents a substantive right to the affirmative intervention by state actors to minimize the risk of drowning.

239.     At all relevant times material hereto, defendant DNREC operated under a policy, custom, or practice with respect to safeguarding the substantive rights of licensees on public lands to personal security and to be free from a government official's deliberate indifference to or acts that increase the risk of serious injury or death from unjustified invasions of bodily integrity.

240.     At all relevant times material hereto, defendant DNREC by and through the instrumentality of its agents and policy makers exercised a deliberate choice to follow a course of action, from among various alternatives, resulting in the following:

(a)      Failed to ensure that Subaqueous Lands Permit number 297/13, authorizing the dredging and jetty construction projects, included a permit condition that the permitee provide notice and

warning to local municipalities, agencies, officials and policymakers that the dredging and jetty construction projects would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers;

(b)    Failed to ensure that Subaqueous Lands Permit number 297/13, authorizing the dredging and jetty construction projects, included a permit condition that the permitee be required to post a sign or warning signals to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the dredging and jetty construction projects;

(c)    Failed to exercise reasonable care to make the dangerous condition of South Bowers Beach and the Murderkill River safe for expected use;

(d)    Failed to take reasonable measures to warn the licensees of the dangerous condition of South Bowers Beach and the Murderkill River;

(e)    Failed to take reasonable measures to warn the licensees of the risk involved in recreational swimming at South Bowers Beach and the Murderkill River;

(f)    Failed to post warning or notice signs at or on South Bowers Beach prohibiting recreational swimming at South Bowers Beach and the Murderkill River during tidal changes;

(g)    Failed to take reasonable measures to ensure public safety on public lands and waterways;

(h)    Failed to take reasonable measures to abate the dangerous condition existing on public lands, subaqueous lands, waterways, and certain private properties under its jurisdiction.

241.    Defendant DNREC, by and through the instrumentality of its agents and policy makers, exercised a deliberate choice to follow a course of action, from among various alternatives, which violated the Preamble and Article 1, Sections 6 and 9 of the Constitution of the State of Delaware and caused plaintiff's decedents to suffer a deprivation of the constitutional right to personal security to be free from a government

official's deliberate indifference to, or acts that increased the risk of serious injury or death from unjustified invasions of bodily integrity.

242.    Defendant DNREC, by and through the instrumentality of its agents and policy makers, exercised a deliberate choice to follow a course of action, from among various alternatives, which caused the plaintiff's decedents to suffer death without due process and violated the plaintiff's decedents substantive right to the affirmative intervention by state actors to minimize the risk of drowning guaranteed by the Preamble and Article 1, Sections 6 and 9 of the Constitution of the State of Delaware.

243.    As a direct and proximate result of the above-described grossly and wantonly customs, practices, and policies employed by the defendant DNREC, the plaintiff's decedents were caused to suffer a deprivation of constitutional rights protected by the Preamble and Article 1, Sections 6 and 9 of the Constitution of the State of Delaware.

244.    As a direct and proximate result of the above-described grossly and wantonly customs, practices, and policies employed by the defendant DNREC, plaintiff Anterine Maple and wrongful death beneficiaries have been caused to suffer those various injuries, loss and expenses as set forth above.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George and prays for judgment against defendant DNREC, jointly and severally, and the relief which follows:

I.    That plaintiff be awarded compensatory damages as proven;

II.    That plaintiff be awarded interest and damages for prejudgment delay;

III.    That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT VIII
## VIOLATION OF THE CONSTITUTION OF THE STATE OF DELAWARE
### (Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George, deceased v Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey)

### Direct Theory of Liability

245.    Plaintiff Anterine Maple incorporates by reference the paragraphs above as if set forth herein in full.

246.    At all relevant times material hereto, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey were responsible for safeguarding the substantive right of plaintiff's decedents to be free from a government official's deliberate indifference to, or acts that increased the risk of serious injury or death from unjustified invasions of bodily integrity protected by the Preamble and Article 1, Sections 6 and 9 of the Constitution of the State of Delaware.

247.    At all relevant times material hereto, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey were responsible for safeguarding the substantive right of plaintiff's decedents to the affirmative intervention by state actors to minimize the risk of drowning guaranteed by the Preamble and Article 1, Sections 6 and 9 of the Constitution of the State of Delaware.

248.    At all relevant times material hereto, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey acted with gross and wanton negligence and a deliberate indifference to the rights of the plaintiff's decedents in the following, but not limited, ways:

(a)    Failed to ensure that Subaqueous Lands Permit number 297/13, authorizing the dredging and jetty construction projects, included a permit condition that the permitee provide notice and warning to local municipalities, agencies, officials and policymakers that the dredging and jetty construction projects would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers;

(b)    Failed to ensure that Subaqueous Lands Permit number 297/13, authorizing the dredging and jetty construction projects, included a permit condition that the permitee be required to post a sign or warning signals to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the dredging and jetty construction projects;

(c)    Failed to exercise reasonable care to make the dangerous condition of South Bowers Beach and the Murderkill River safe for expected use;

(d)    Failed to take reasonable measures to warn the licensees of the dangerous condition of South Bowers Beach and the Murderkill River;

(e)    Failed to take reasonable measures to warn the licensees of the risk involved in recreational swimming at South Bowers Beach and the Murderkill River;

(f)    Failed to post warning or notice signs at or on South Bowers Beach prohibiting recreational swimming at South Bowers Beach and the Murderkill River during tidal changes;

(g)    Failed to take reasonable measures to ensure public safety on public lands and waterways;

(h)    Failed to take reasonable measures to abate the dangerous condition existing on public lands and waterways under their authority.

249.    As a direct and proximate result of the above-described gross and wanton negligence and deliberate indifference to the rights of the plaintiff's decedents, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey caused the plaintiff's decedents to suffer a deprivation of the substantive right of plaintiff's decedents to be free from a government official's deliberate indifference to, or acts that increased the risk of serious injury or death from unjustified invasions of bodily integrity protected by the Preamble and Article 1, Sections 6 and 9 of the Constitution of the State of Delaware.

250.     As a direct and proximate result of the above-described gross and wanton negligence and deliberate indifference to the rights of the plaintiff's decedents, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey, caused the plaintiff's decedents to suffer a deprivation of the substantive right of plaintiff's decedents to the affirmative intervention by state actors to minimize the risk of drowning guaranteed by the Preamble and Article 1, Sections 6 and 9 of the Constitution of the State of Delaware.

251.     As a direct and proximate result of the above-described gross and wanton negligence and deliberate indifference to the rights of the plaintiff's decedents, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey caused the plaintiff Anterine Maple and wrongful death beneficiaries to suffer those various injuries, loss and expenses as set forth above.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George prays for judgment against defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey, jointly and severally, and the relief which follows:

I.     That plaintiff be awarded compensatory damages as proven;

II.     That plaintiff be awarded exemplary damages as proven;

III.     That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

### COUNT IX
### VIOLATIONS OF CONSTITUTION OF THE STATE OF DELAWARE
### (Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George, deceased v Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey)

### Supervisor Theory of Liability

252.    Plaintiff Anterine Maple incorporates by reference the paragraphs above as if set forth herein in full.

253.    At all relevant times material hereto, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey were responsible for safeguarding the substantive rights of plaintiff's decedents protected by the guarantees of the Preamble and Article 1, Sections 6 and 9 of the Constitution of the State of Delaware to personal security and to be free from a government official's deliberate indifference to, or acts that increased the risk of serious injury or death from unjustified invasions of bodily integrity protected by the Preamble and Article 1, Sections 6 and 9 of the Constitution of the State of Delaware.

254.    At all relevant times material hereto, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey were responsible for safeguarding the substantive rights of plaintiff's decedents to the affirmative intervention by state actors to minimize the risk of drowning guaranteed by the Preamble and Article 1, Sections 6 and 9 of the Constitution of the State of Delaware.

255.    At all relevant times material hereto, defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey acted with gross and wanton negligence and a deliberate indifference to the rights of the plaintiff's decedents in the following, but not limited, ways:

(a)    Failed to ensure that subordinate employees were sufficiently equipped to undertake appropriate measures to safeguard unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay;

(b)      Failed to train and educate subordinate employees sufficient to ensure that appropriate measures were taken to safeguard unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay;

(c)      Failed to supervise subordinate employees sufficient to ensure that appropriate measures were taken to safeguard unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River from the latent dangers created by the aforementioned dredging and jetty construction projects of the Murderkill River estuary entrance channel along Delaware Bay.

256.    As a direct and proximate result of the above-described grossly or wantonly negligent and deliberate actions or inactions of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey, plaintiff's decedents were caused to suffer a deprivation of constitutional rights protected by the guarantees of the Preamble and Article 1, Sections 6 and 9 of the Constitution of the State of Delaware.

257.    As a direct and proximate result of the above-described grossly or wantonly negligent and deliberate actions or inactions of defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey, plaintiff Anterine Maple and wrongful death beneficiaries have been caused to suffer those various injuries, loss and expenses as set forth above suffered as a result of the decedents' death.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George prays for judgment against defendants Frank M. Piorko, Charles E. Williams, II, Daniel J. Brower, and Sarah W. Cookey, jointly and severally, and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven;

II.     That plaintiff be awarded exemplary damages as proven;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.    That plaintiff be awarded further relief as this Court may deem appropriate.

**COUNT X**
**PROFESSIONAL NEGLIGENCE**
**(Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased,**
**and the Estate of Zion George, deceased v Edward T. Fulford, PE)**

258.    Plaintiff Anterine Maple incorporates by reference the paragraphs above as if set forth herein in full.

259.    At all relevant times material hereto, defendant Edward T. Fulford, PE held himself out as a licensed professional civil engineer possessing the ordinary and customary skills, knowledge and diligence of like civil engineers in the field of coastal engineering.

260.    Defendant Edward T. Fulford, PE undertook for consideration the drafting of engineering plans, drawings, technical specifications and contract documents on behalf of defendant DNREC in connection with the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

261.    Defendant Edward T. Fulford, PE knew or should have recognized that his undertaking of preparing the engineering plans, drawings, technical specifications, and contract documents were necessary for the protection of third persons and/or things.

262.    At all material times relevant to the subject matter described in this Complaint, defendant Edward T. Fulford, PE  knew or reasonably should have known that the dredging and jetty reconstruction projects within the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would alter the tidal force and amplify the velocity of the movement of water during tide change at South Bowers Beach near the Murderkill River estuary and the Murderkill River.

263.    At all material times relevant to the subject matter described in this Complaint, defendant Edward T. Fulford, PE  knew or reasonably should have known that the dredging and jetty reconstruction projects within the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB  would create a dangerous and unreasonable hazard to unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River.

264.    At all material times relevant to the subject matter described in this Complaint, defendant Edward T. Fulford, PE  knew or reasonably should have known that South Bowers Beach near the Murderkill River estuary and the Murderkill River would be used for recreational activities, inclusive of swimming, during tide changes upon completion of the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

265.    At all material times relevant to the subject matter described in this Complaint, defendant Edward T. Fulford, PE knew or reasonably should have suspected that day-vacationers, such as the plaintiff's decedents, would not discover or realize the dangerous and unreasonable risk of harm which the tidal force of the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach presented to recreational swimmers during tidal changes.

266.    At all material times relevant to the subject matter described in this Complaint, defendant Edward T. Fulford, PE  knew or reasonably should have known it was practically certain that drownings of recreational swimmers would result in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

267.    At all material times, it was apparent that there was an imminent likelihood that drownings of recreational swimmers in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach would occur in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

268.    Defendant Edward T. Fulford, PE owed the plaintiff's decedents a common law duty to exercise reasonable care to protect his professional undertaking of preparing the engineering plans, drawings, technical specifications, and contract documents from increasing the risk that the plaintiff's decedents would suffer physical harm.

269.    Defendant Edward T. Fulford, PE breached the duty of care owed he owed to the plaintiff's decedents and deviated from acceptable standards of professional care in the following, but not limited, ways:

(a)    Failing to contemplate that the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would result in a change to the tidal flows of the Murderkill River which presented a latent dangerous condition to recreational swimmers;

(b)    Failing to ensure the engineering plans, drawings, technical specifications and contract documents which he prepared and stamped in connection with the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB contained specifications and conditions requiring that local municipalities, agencies, officials and policymakers be provided notice and warning that the dredging and jetty construction projects would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers;

(c)    Failing to ensure the engineering plans, drawings, technical specifications and contract

documents which he prepared and stamped in connection with the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB contained specifications and conditions requiring the posting of a sign or warning signals to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the dredging and jetty construction projects;

(d)     Failed to take reasonable measures to protect against the increased risk of harm to recreational swimmers which would foreseeably result from the scope of work detailed in connection with the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

270.     The aforementioned acts and omissions on the part of defendant Edward T. Fulford, PE were careless and negligent and substantially increased the risk of aforementioned harm suffered by the plaintiff's decedents.

271.     As a direct and proximate result of the defendant Edward T. Fulford, PE's negligent acts, omissions or failures to act, the plaintiff's decedents were caused to suffer that damage and loss aforementioned.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George prays for judgment against Edward T. Fulford, PE, jointly and severally, and the relief which follows:

I.     That plaintiff be awarded compensatory damages as proven;

II.     That plaintiff be awarded exemplary damages as proven;

III.     That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT XI
## PROFESSIONAL NEGLIGENCE
### (Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George, deceased v Gary Williams, PE)

272.    Plaintiff Anterine Maple incorporates by reference the paragraphs above as if set forth herein in full.

273.    At all relevant times material hereto, defendant Gary Williams, PE held himself out as a licensed professional civil engineer possessing the ordinary and customary skills, knowledge and diligence of like civil engineers in the field of coastal engineering.

274.    Defendant Gary Williams, PE undertook for consideration the duties associated with a Project Engineer in connection with the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG.

275.    Defendant Gary Williams, PE knew or should have recognized that his undertaking as a Project Engineer in connection with the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG was necessary for the protection of third persons and/or things.

276.    At all material times relevant to the subject matter described in this Complaint, defendant Gary Williams, PE knew or reasonably should have known that the dredging project within the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG would alter the tidal force and amplify the velocity of the movement of water during tide change at South Bowers Beach near the Murderkill River estuary and the Murderkill River.

277.    At all material times relevant to the subject matter described in this Complaint, defendant Gary Williams, PE knew or reasonably should have known that the dredging project within the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG

would create a dangerous and unreasonable hazard to unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River.

278.    At all material times relevant to the subject matter described in this Complaint, defendant Gary Williams, PE knew or reasonably should have known that South Bowers Beach near the Murderkill River estuary and the Murderkill River would be used for recreational activities, inclusive of swimming, during tide changes upon completion of the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG.

279.    At all material times relevant to the subject matter described in this Complaint, defendant Gary Williams, PE knew or reasonably should have suspected that day-vacationers, such as the plaintiff's decedents, would not discover or realize the dangerous and unreasonable risk of harm which the tidal force of the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach presented to recreational swimmers during tidal changes.

280.    At all material times relevant to the subject matter described in this Complaint, defendant Gary Williams, PE knew or reasonably should have known it was practically certain that drownings of recreational swimmers would result in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

281.    At all material times, it was apparent that there was an imminent likelihood that drownings of recreational swimmers in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach would occur in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

282.    Defendant Gary Williams, PE owed the plaintiff's decedents a common law duty to exercise reasonable care to protect his professional undertaking as the Project Engineer in connection with the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG from increasing the risk that the plaintiff's decedents would suffer physical harm.

283.    Defendant Gary Williams, PE breached the duty of care owed he owed to the plaintiff's decedents and deviated from acceptable standards of professional care in the following, but not limited to, ways:

(a)    Failing to contemplate that the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG would result in a change to the tidal flows of the Murderkill River which presented a latent dangerous condition to recreational swimmers;

(b)    Failing to ensure that local municipalities, agencies, officials and policymakers were provided notice and warning that the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers;

(c)    Failing to ensure that a sign or warning signals were posted to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the dredging project;

(d)    Failed to take reasonable measures to protect against the increased risk of harm to recreational swimmers which would foreseeably result from the dredging project.

284.    The aforementioned acts and omissions on the part of defendant Gary Williams, PE were careless and negligent and substantially increased the risk of aforementioned harm suffered by the plaintiff's decedents.

285.    As a direct and proximate result of the defendant Gary Williams, PE's negligent acts, omissions or failures to act, the plaintiff's decedents were caused to suffer that damage and loss aforementioned.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George prays for judgment against Gary Williams, PE, jointly and severally, and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven;

II.     That plaintiff be awarded exemplary damages as proven;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT XII
## PROFESSIONAL NEGLIGENCE
**(Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased,
and the Estate of Zion George, deceased v Ken Eaton, PE)**

286.    Plaintiff Anterine Maple incorporates by reference the paragraphs above as if set forth herein in full.

287.    At all relevant times material hereto, defendant Ken Eaton, PE held himself out as a licensed professional civil engineer possessing the ordinary and customary skills, knowledge and diligence of like civil engineers in the field of coastal engineering.

288.    Defendant Ken Eaton, PE undertook for consideration the duties associated with a Project Engineer in connection with the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

289.     Defendant Ken Eaton, PE knew or should have recognized that his undertaking as a Project Engineer in connection with the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB was necessary for the protection of third persons and/or things.

290.    At all material times relevant to the subject matter described in this Complaint, defendant Ken

Eaton, PE knew or reasonably should have known that the jetty reconstruction project within the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would alter the tidal force and amplify the velocity of the movement of water during tide change at South Bowers Beach near the Murderkill River estuary and the Murderkill River.

291.    At all material times relevant to the subject matter described in this Complaint, defendant Ken Eaton, PE knew or reasonably should have known that the jetty reconstruction project within the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would create a dangerous and unreasonable hazard to unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River.

292.    At all material times relevant to the subject matter described in this Complaint, defendant Ken Eaton, PE knew or reasonably should have known that South Bowers Beach near the Murderkill River estuary and the Murderkill River would be used for recreational activities, inclusive of swimming, during tide changes upon completion of the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

293.    At all material times relevant to the subject matter described in this Complaint, defendant Ken Eaton, PE knew or reasonably should have suspected that day-vacationers, such as the plaintiff's decedents, would not discover or realize the dangerous and unreasonable risk of harm which the tidal force of the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach presented to recreational swimmers during tidal changes.

294.    At all material times relevant to the subject matter described in this Complaint, defendant Ken Eaton, PE knew or reasonably should have known it was practically certain that drownings of recreational swimmers would result in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill

River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

295.     At all material times, it was apparent that there was an imminent likelihood that drownings of recreational swimmers in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach would occur in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

296.     Defendant Ken Eaton, PE owed the plaintiff's decedents a common law duty to exercise reasonable care to protect his professional undertaking as the Project Engineer in connection with the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB from increasing the risk that the plaintiff's decedents would suffer physical harm.

297.     Defendant Ken Eaton, PE breached the duty of care owed he owed to the plaintiff's decedents and deviated from acceptable standards of professional care in the following, but not limited to, ways:

(a)     Failing to contemplate that the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would result in a change to the tidal flows of the Murderkill River which presented a latent dangerous condition to recreational swimmers;

(b)     Failing to ensure that local municipalities, agencies, officials and policymakers were provided notice and warning that the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers;

(c)     Failing to ensure that a sign or warning signals were posted to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the jetty construction project;

(d)    Failed to take reasonable measures to protect against the increased risk of harm to recreational swimmers which would foreseeably result from the jetty construction project.

298.    The aforementioned acts and omissions on the part of defendant Ken Eaton, PE were careless and negligent and substantially increased the risk of aforementioned harm suffered by the plaintiff's decedents.

299.    As a direct and proximate result of the defendant Ken Eaton, PE's negligent acts, omissions or failures to act, the plaintiff's decedents were caused to suffer that damage and loss aforementioned.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George prays for judgment against Ken Eaton, PE, jointly and severally, and the relief which follows:

I.    That plaintiff be awarded compensatory damages as proven;

II.    That plaintiff be awarded exemplary damages as proven;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.    That plaintiff be awarded further relief as this Court may deem appropriate.

### COUNT XIII
### PROFESSIONAL NEGLIGENCE
### [Vicarious Liability]
### (Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George, deceased v Davis, Dowden & Feindel, Inc.)

300.    Plaintiff Anterine Maple incorporates by reference the paragraphs above as if set forth herein in full.

301.    At all relevant times material hereto, defendant Davis, Dowden & Feindel, Inc. held itself out as a professional civil engineer firm possessing the ordinary and customary skills, knowledge and diligence of like civil engineers in the field of coastal engineering.

302.    At all relevant times material hereto, defendant Davis, Dowden & Feindel, Inc. was the parent company of defendant Andrews, Miller & Associates, Inc.

303.     At all relevant times material hereto, defendant Andrews, Miller & Associates, Inc. was a division of defendant Davis, Dowden & Feindel, Inc.

304.     At all relevant times material hereto, defendant Davis, Dowden & Feindel, Inc. was the alter ego of defendant Andrews, Miller & Associates, Inc.

305.     At all relevant times material hereto, defendants Edward T. Fulford, PE, Gary Williams, PE, and Ken Eaton, PE were authorized agents, ostensible agents, servants, workman and/or employees of defendant Davis, Dowden & Feindel, Inc. acting within and during the course and scope of their employment, authority or apparent authority.

306.     Defendant Davis, Dowden & Feindel, Inc., by and through  its duly authorized employees, agents, workers and/or representatives acting within the scope of their employment,  undertook for consideration to provide professional engineering services on behalf of defendant the DNREC  in connection with the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the  Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

307.     Defendant Davis, Dowden & Feindel, Inc. knew or should have recognized that its professional undertakings in connection with the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB was necessary for the protection of third persons and/or things.

308.     At all material times relevant to the subject matter described in this Complaint, defendant Davis, Dowden & Feindel, Inc. knew or reasonably should have known that the dredging and jetty reconstruction projects within the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation

Extension Contract No. NAT-201311/NJETTY-REHAB would alter the tidal force and amplify the velocity of the movement of water during tide change at South Bowers Beach near the Murderkill River estuary and the Murderkill River.

309.    At all material times relevant to the subject matter described in this Complaint, defendant Davis, Dowden & Feindel, Inc. knew or reasonably should have known that the dredging and jetty reconstruction projects within the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would create a dangerous and unreasonable hazard to unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River.

310.    At all material times relevant to the subject matter described in this Complaint, defendant Davis, Dowden & Feindel, Inc. knew or reasonably should have known that South Bowers Beach near the Murderkill River estuary and the Murderkill River would be used for recreational activities, inclusive of swimming, during tide changes upon completion of the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

311.    At all material times relevant to the subject matter described in this Complaint, defendant Davis, Dowden & Feindel, Inc. knew or reasonably should have suspected that day-vacationers, such as the plaintiff's decedents, would not discover or realize the dangerous and unreasonable risk of harm which the tidal force of the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach presented to recreational swimmers during tidal changes.

312.    At all material times relevant to the subject matter described in this Complaint, defendant Davis, Dowden & Feindel, Inc. knew or reasonably should have known it was practically certain that drownings of recreational swimmers would result in the Murderkill River near the entrance channel of the Delaware Bay

at South Bowers Beach in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

313.    At all material times, it was apparent that there was an imminent likelihood that drownings of recreational swimmers in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach would occur in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

314.    Defendant Davis, Dowden & Feindel, Inc. owed the plaintiff's decedents a common law duty to exercise reasonable care to protect its professional undertakings in connection with the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB from increasing the risk that the plaintiff's decedents would suffer physical harm.

315.    Defendant Davis, Dowden & Feindel, Inc. breached the duty of care owed it owed to the plaintiff's decedents and deviated from acceptable standards of professional care in the following, but not limited, ways:

(a)    Failing to contemplate that the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would result in a change to the tidal flows of the Murderkill River which presented a latent dangerous condition to recreational swimmers;

(b)    Failing to ensure the engineering plans, drawings, technical specifications and contract documents which it prepared and stamped in connection with the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation

Extension Contract No. NAT-201311/NJETTY-REHAB contained specifications and conditions requiring that local municipalities, agencies, officials and policymakers be provided notice and warning that the dredging and jetty construction projects would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers;

(c)    Failing to ensure the engineering plans, drawings, technical specifications and contract documents which he prepared and stamped in connection with the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB contained specifications and conditions requiring the posting of a sign or warning signals to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the dredging and jetty construction projects.

(d)    Failed to ensure that local municipalities, agencies, officials and policymakers were provided notice and warning that the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers;

(e)    Failed to take reasonable measures to protect against the increased risk of harm to recreational swimmers which would foreseeably result from the scope of work detailed in connection with the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB;

(f)    Failing to ensure that a sign or warning signals were posted to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the jetty construction project;

(g)    Failed to take reasonable measures to protect against the increased risk of harm to recreational swimmers which would foreseeably result from the dredging and jetty construction projects.

316.     The aforementioned acts and omissions on the part of defendant Davis, Dowden & Feindel, Inc. were careless and negligent and substantially increased the risk of aforementioned harm suffered by the plaintiff's decedents.

317.     As a direct and proximate result of the defendant Davis, Dowden & Feindel, Inc.'s negligent acts, omissions or failures to act, the plaintiff's decedents were   caused to suffer that damage and loss aforementioned.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George prays for judgment against Davis, Dowden & Feindel, Inc., jointly and severally, and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven;

II.     That plaintiff be awarded exemplary damages as proven;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

### COUNT XIV
### PROFESSIONAL NEGLIGENCE
### [Vicarious Liability]
### (Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George, deceased v Andrews, Miller & Associates, Inc.)

318.     Plaintiff Anterine Maple incorporates by reference the paragraphs above as if set forth herein in full.

319.     At all relevant times material hereto, defendant Andrews, Miller & Associates, Inc. held itself out as a professional civil engineer firm possessing the ordinary and customary skills, knowledge and diligence of like civil engineers in the field of coastal engineering.

320.     At all relevant times material hereto, defendant Andrews, Miller & Associates, Inc. was a wholly owned subsidiary of its parent company of defendant Davis, Dowden & Feindel, Inc.

321.     At all relevant times material hereto, defendant Andrews, Miller & Associates, Inc. was a division of defendant Davis, Dowden & Feindel, Inc.

322.     At all relevant times material hereto, defendant Andrews, Miller & Associates, Inc. was the alter ego of defendant Davis, Dowden & Feindel, Inc.

323.     At all relevant times material hereto, defendants Edward T. Fulford, PE, Gary Williams, PE, and Ken Eaton, PE were authorized agents, ostensible agents, servants, workman and/or employees of defendant Andrews, Miller & Associates, Inc. acting within and during the course and scope of their employment, authority or apparent authority.

324.     Defendant Andrews, Miller & Associates, Inc., by and through  its duly authorized employees, agents, workers and/or representatives acting within the scope of their employment,  undertook for consideration to provide professional engineering services on behalf of defendant the DNREC  in connection with the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

325.     Defendant Andrews, Miller & Associates, Inc.  knew or should have recognized that its professional undertakings in connection with the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB was necessary for the protection of third persons and/or things.

326.     At all material times relevant to the subject matter described in this Complaint, defendant Andrews, Miller & Associates, Inc.  knew or reasonably should have known that the dredging and jetty reconstruction projects within the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation

80

Extension Contract No. NAT-201311/NJETTY-REHAB would alter the tidal force and amplify the velocity of the movement of water during tide change at South Bowers Beach near the Murderkill River estuary and the Murderkill River.

327.    At all material times relevant to the subject matter described in this Complaint, defendant Andrews, Miller & Associates, Inc. knew or reasonably should have known that the dredging and jetty reconstruction projects within the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would create a dangerous and unreasonable hazard to unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River.

328.    At all material times relevant to the subject matter described in this Complaint, defendant Andrews, Miller & Associates, Inc. knew or reasonably should have known that South Bowers Beach near the Murderkill River estuary and the Murderkill River would be used for recreational activities, inclusive of swimming, during tide changes upon completion of the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

329.    At all material times relevant to the subject matter described in this Complaint, defendant Andrews, Miller & Associates, Inc. knew or reasonably should have suspected that day-vacationers, such as the plaintiff's decedents, would not discover or realize the dangerous and unreasonable risk of harm which the tidal force of the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach presented to recreational swimmers during tidal changes.

330.    At all material times relevant to the subject matter described in this Complaint, defendant Andrews, Miller & Associates, Inc. knew or reasonably should have known it was practically certain that drownings of recreational swimmers would result in the Murderkill River near the entrance channel of the

Delaware Bay at South Bowers Beach in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

331.    At all material times, it was apparent that there was an imminent likelihood that drownings of recreational swimmers in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach would occur in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

332.    Defendant Andrews, Miller & Associates, Inc. owed the plaintiff's decedents a common law duty to exercise reasonable care to protect its professional undertakings in connection with the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB from increasing the risk that the plaintiff's decedents would suffer physical harm.

333.    Defendant Andrews, Miller & Associates, Inc. breached the duty of care owed it owed to the plaintiff's decedents and deviated from acceptable standards of professional care in the following, but not limited, ways:

(a)    Failing to contemplate that the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would result in a change to the tidal flows of the Murderkill River which presented a latent dangerous condition to recreational swimmers;

(b)    Failing to ensure the engineering plans, drawings, technical specifications and contract documents which it prepared and stamped in connection with the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation

Extension Contract No. NAT-201311/NJETTY-REHAB contained specifications and conditions requiring that local municipalities, agencies, officials and policymakers be provided notice and warning that the dredging and jetty construction projects would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers;

(c)     Failing to ensure the engineering plans, drawings, technical specifications and contract documents which he prepared and stamped in connection with the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB contained specifications and conditions requiring the posting of a sign or warning signals to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the dredging and jetty construction projects;

(d)     Failed to ensure that local municipalities, agencies, officials and policymakers were provided notice and warning that the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers;

(e)     Failed to take reasonable measures to protect against the increased risk of harm to recreational swimmers which would foreseeably result from the scope of work detailed in connection with the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG and the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB;

(f)     Failing to ensure that a sign or warning signals were posted to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the dredging and jetty construction projects;

(g)     Failed to take reasonable measures to protect against the increased risk of harm to recreational swimmers which would foreseeably result from the dredging and jetty construction projects.

334.    The aforementioned acts and omissions on the part of defendant Andrews, Miller & Associates, Inc. were careless and negligent and substantially increased the risk of aforementioned harm suffered by the plaintiff's decedents.

335.    As a direct and proximate result of the defendant Andrews, Miller & Associates, Inc.'s negligent acts, omissions or failures to act, the plaintiff's decedents were  caused to suffer that damage and loss aforementioned.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George prays for judgment against Andrews, Miller & Associates, Inc. , jointly and severally, and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven;

II.     That plaintiff be awarded exemplary damages as proven;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

### COUNT XV
### NEGLIGENCE
### [Vicarious Liability]
### (Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George, deceased v Manson Construction Company)

336.    Plaintiff Anterine Maple incorporates by reference the paragraphs above as if set forth herein in full.

337.    At all relevant times material hereto, defendant Manson Construction Company held itself out as a marine construction firm possessing the ordinary and customary skills, knowledge and diligence of like contractor service providers in the field of marine construction.

338.    At all relevant times material hereto, defendant Manson Construction Company, by and through its duly authorized employees, agents, workers and/or representatives acting within the scope of their

employment, undertook for consideration to provide professional engineering services on behalf of defendant the DNREC in connection with the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG.

339.    Defendant Manson Construction Company knew or should have recognized that its undertaking and prosecution of the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG was necessary for the protection of third persons and/or things.

340.    At all material times relevant to the subject matter described in this Complaint, defendant Manson Construction Company knew or reasonably should have known that the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG would alter the tidal force and amplify the velocity of the movement of water during tide change at South Bowers Beach near the Murderkill River estuary and the Murderkill River.

341.    At all material times relevant to the subject matter described in this Complaint, defendant Manson Construction Company knew or reasonably should have known that the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG would create a dangerous and unreasonable hazard to unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River.

342.    At all material times relevant to the subject matter described in this Complaint, defendant Manson Construction Company knew or reasonably should have known that South Bowers Beach near the Murderkill River estuary and the Murderkill River would be used for recreational activities, inclusive of swimming, during tide changes upon completion of the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG.

343.    At all material times relevant to the subject matter described in this Complaint, defendant Manson Construction Company knew or reasonably should have suspected that day-vacationers, such as the plaintiff's decedents, would not discover or realize the dangerous and unreasonable risk of harm which the tidal force of the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach presented to recreational swimmers during tidal changes.

344.    At all material times relevant to the subject matter described in this Complaint, defendant Manson Construction Company knew or reasonably should have known it was practically certain that drownings of recreational swimmers would result in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

345.    At all material times, it was apparent that there was an imminent likelihood that drownings of recreational swimmers in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach would occur in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

346.    Defendant Manson Construction Company owed the plaintiff's decedents a common law duty to exercise reasonable care to protect its professional undertakings in connection with the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG from increasing the risk that the plaintiff's decedents would suffer physical harm.

347.    Defendant Manson Construction Company breached the duty of care owed it owed to the plaintiff's decedents and deviated from acceptable standards of professional care in the following, but not limited to, ways:

(a)    Failing to contemplate that the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG would result in a change to the tidal flows of the Murderkill River which presented a latent dangerous condition to recreational swimmers;

(b)    Failing to contemplate that the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG would create a latent danger to recreational swimmers at South Bowers Beach and the Murderkill River;

(c)    Failing to ensure that local municipalities, agencies, officials and policymakers were provided notice and warning that the scope of work detailed in the Murderkill River Dredging and Beach Nourishment Contract No. NAT201301 – HYD.DREDG would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers;

(d)    Failing to ensure a sign or warning signals were posted sufficient to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the dredging project;

(e)    Failed to take reasonable measures to protect against the increased risk of harm to recreational swimmers which would foreseeably result from the dredging project.

348.    Defendant Manson Construction Company was grossly or wantonly negligent in failing to exercise reasonable care to prevent the risk of harm which its dredging activity created to recreational swimmers from taking effect.

349.    As a direct and proximate result of the defendant Manson Construction Company's grossly negligent and wanton acts, omissions or failures to act, plaintiff Anterine Maple and wrongful death beneficiaries have been caused to suffer those various injuries, loss and expenses as set forth above.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George prays for judgment against defendant Manson Construction Company, jointly and severally, and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven;

II.     That plaintiff be awarded exemplary damages as proven;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

**COUNT XVI**
**NEGLIGENCE**
**[Vicarious Liability]**
**(Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George, deceased v Kingfisher Environmental Services, Inc.)**

350.    Plaintiff Anterine Maple incorporates by reference the paragraphs above as if set forth herein in full.

351.    At all relevant times material hereto, defendant Kingfisher Environmental Services, Inc. held itself out as a marine construction firm possessing the ordinary and customary skills, knowledge and diligence of like contractor service providers in the field of marine construction.

352.    At all relevant times material hereto, defendant Kingfisher Environmental Services, Inc., by and through its duly authorized employees, agents, workers and/or representatives acting within the scope of their employment, undertook for consideration to provide professional engineering services on behalf of defendant the DNREC in connection with the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

353.    Defendant Kingfisher Environmental Services, Inc. knew or should have recognized that its undertaking and prosecution of the scope of work detailed in the Murderkill River North Jetty Rehabilitation

Extension Contract No. NAT-201311/NJETTY-REHAB was necessary for the protection of a third persons or his things.

354.    Defendant Kingfisher Environmental Services, Inc. owed the plaintiff's decedents a common law duty to exercise reasonable care to protect its professional undertakings in connection with the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB from increasing the risk that the plaintiff's decedents would suffer physical harm.

355.    At all material times relevant to the subject matter described in this Complaint, defendant Kingfisher Environmental Services, Inc. knew or reasonably should have known that the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would alter the tidal force and amplify the velocity of the movement of water during tide change at South Bowers Beach near the Murderkill River estuary and the Murderkill River.

356.    At all material times relevant to the subject matter described in this Complaint, defendant Kingfisher Environmental Services, Inc. knew or reasonably should have known that the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would create a dangerous and unreasonable hazard to unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River.

357.    At all material times relevant to the subject matter described in this Complaint, defendant Kingfisher Environmental Services, Inc. knew or reasonably should have known that South Bowers Beach near the Murderkill River estuary and the Murderkill River would be used for recreational activities, inclusive of swimming, during tide changes upon completion of the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB.

358.    At all material times relevant to the subject matter described in this Complaint, defendant Kingfisher Environmental Services, Inc. knew or reasonably should have suspected that day-vacationers, such

as the plaintiff's decedents, would not discover or realize the dangerous and unreasonable risk of harm which the tidal force of the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach presented to recreational swimmers during tidal changes.

359.    At all material times relevant to the subject matter described in this Complaint, defendant Kingfisher Environmental Services, Inc. knew or reasonably should have known it was practically certain that drownings of recreational swimmers would result in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

360.    At all material times, it was apparent that there was an imminent likelihood that drownings of recreational swimmers in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach would occur in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

361.    Defendant Kingfisher Environmental Services, Inc. owed the plaintiff's decedents a common law duty to exercise reasonable care to protect its professional undertakings in connection with the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB from increasing the risk that the plaintiff's decedents would suffer physical harm.

362.    Defendant Kingfisher Environmental Services, Inc. breached the duty of care owed it owed to the plaintiff's decedents and deviated from acceptable standards of professional care in the following, but not limited to, ways:

(a)    Failing to contemplate that the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would result in a change to the

tidal flows of the Murderkill River which presented a latent dangerous condition to recreational swimmers;

(b)    Failing to contemplate that the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would create a latent danger to recreational swimmers at South Bowers Beach and the Murderkill River;

(c)    Failing to ensure that local municipalities, agencies, officials and policymakers were provided notice and warning that the scope of work detailed in the Murderkill River North Jetty Rehabilitation Extension Contract No. NAT-201311/NJETTY-REHAB would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers;

(d)    Failing to ensure a sign or warning signals were posted sufficient to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the dredging project;

(e)    Failed to take reasonable measures to protect against the increased risk of harm to recreational swimmers which would foreseeably result from the jetty construction project.

363.    Defendant Kingfisher Environmental Services, Inc. was grossly or wantonly negligent in failing to exercise reasonable care to prevent the risk of harm which its jetty construction created to recreational swimmers from taking effect.

364.    As a direct and proximate result of the defendant Kingfisher Environmental Services, Inc.'s grossly negligent and wanton acts, omissions or failures to act, plaintiff Anterine Maple and wrongful death beneficiaries have been caused to suffer those various injuries, loss and expenses as set forth above.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George prays for judgment against defendant Kingfisher Environmental Services, Inc., jointly and severally, and the relief which follows:

I.    That plaintiff be awarded compensatory damages as proven;

II.       That plaintiff be awarded exemplary damages as proven;

III.     That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

### COUNT XVII
### VIOLATIONS OF CIVIL RIGHTS
### SUBSTANTIVE DUE PROCESS – FOURTEENTH AMENDMENT
### (Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George, deceased v Frank J. Cianfrani and John C. Beckering, PE)

365.     Plaintiff Anterine Maple incorporates by reference the paragraphs above as if set forth herein in full.

366.     At all material times relevant to the subject matter described in this Complaint, defendants Frank J. Cianfrani and John C. Beckering, PE acted under the color of federal law.

367.     At all times material hereto defendants Frank J. Cianfrani and  John C. Beckering, PE possessed a specialized knowledge and expertise in coastal engineering.

368.     At all relevant times material hereto, defendants  Frank J. Cianfrani and  John C. Beckering, PE, were responsible for the issuance of permit number CENAP-OP-R-2013-1033-23 and its attendants terms and conditions authorizing defendant DNREC to conduct hydraulic maintenance dredging of the authorized federal navigation channel at the mouth of the Murderkill River; conduct beach nourishment activities on the shoreline of South Bowers Beach; and widen, lengthen and raise the elevation of the north Murderkill River entrance jetty.

369.     At all times material hereto in consideration of  issuing Permit number CENAP-OP-R-2013-1033-23 and deciding upon its attendant terms conditions defendants Frank J. Cianfrani and  John C. Beckering, PE had the benefit of reviewing all necessary plans drawings, specifications and documents and exercised unhurried judgments.

370.     At all material times relevant to the subject matter described in this Complaint, defendants Frank J. Cianfrani and  John C. Beckering, PE knew or reasonably should have known that the scope of work detailed in permit number CENAP-OP-R-2013-1033-23  would alter the tidal force and amplify the velocity of the movement of water during tide change at South Bowers Beach near the Murderkill River estuary and the Murderkill River.

371.     At all material times relevant to the subject matter described in this Complaint, defendants Frank J. Cianfrani and John C. Beckering, PE knew or reasonably should have known that the scope of work detailed in permit number CENAP-OP-R-2013-1033-23 would create a dangerous and unreasonable hazard to unsuspecting recreational swimmers at South Bowers Beach and the Murderkill River.

372.     At all material times relevant to the subject matter described in this Complaint, defendants Frank J. Cianfrani and John C. Beckering, PE knew or reasonably should have known that South Bowers Beach near the Murderkill River estuary and the Murderkill River would be used for recreational activities, inclusive of swimming, during tide changes upon completion of scope of work detailed in permit number CENAP-OP-R-2013-1033-23.

373.     At all material times relevant to the subject matter described in this Complaint, defendants Frank J. Cianfrani and John C. Beckering, PE knew or reasonably should have suspected that day-vacationers, such as the plaintiff's decedents, would not discover or realize the dangerous and unreasonable risk of harm which the tidal force of the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach presented to recreational swimmers during tidal changes.

374.     At all relevant times material hereto, defendants  Frank J. Cianfrani and  John C. Beckering, PE knew or reasonably should have known it was practically certain that drownings of recreational swimmers would result in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River

estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

375.    At all material times, it was apparent that there was an imminent likelihood that drownings of recreational swimmers in the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach would occur in the event that no warning or notice signs were posted at or on South Bowers Beach near the Murderkill River estuary alerting beachgoers, such as the plaintiff's decedents, that the variance in velocity of the water's current during the tide change made recreational swimming hazardous.

376.    On or about December 6, 2013, defendants Frank J. Cianfrani and John C. Beckering, PE, issued permit number CENAP-OP-R-2013-1033-23 to the defendant DNREC.

377.    Defendants Frank J. Cianfrani and John C. Beckering, PE, issued permit number CENAP-OP-R-2013-1033-23 without contemplating that the scope of work detailed in permit number CENAP-OP-R-2013-1033-23 would result in a change to the tidal flows of the Murderkill River which presented a latent dangerous condition to recreational swimmers.

378.    Defendants Frank J. Cianfrani and John C. Beckering, PE issued Permit number CENAP-OP-R-2013-1033-23 without imposing a permit condition that permitee defendant DNREC provide notice and warning to local municipalities, agencies, officials and policymakers that the dredging and jetty construction projects would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers.

379.    Defendants Frank J. Cianfrani and  John C. Beckering, PE issued Permit number CENAP-OP-R-2013-1033-23 without imposing a permit condition that permitee defendant DNREC provide notice and warning to local municipalities, agencies, officials and policymakers that the dredging and jetty construction projects would result in a change to the tidal flows of the Murderkill River which presented a dangerous condition to recreational swimmers.

380.     Defendants Frank J. Cianfrani and  John C. Beckering, PE issued Permit number CENAP-OP-R-2013-1033-23 without imposing a permit condition that permitee defendant DNREC require the posting of  a sign or warning signals to protect unsuspecting recreational swimmers from the dangers presented by the change to the tidal flows of the Murderkill River created by the dredging and jetty construction projects.

381.     Defendants Frank J. Cianfrani and John C. Beckering, PE issued Permit number CENAP-OP-R-2013-1033-23 without imposing a permit condition that permitee defendant DNREC take reasonable measures to protect against the increased risk of harm to recreational swimmers which would foreseeably result from the dredging project.

382.     As a direct and proximate result of the Defendants Frank J. Cianfrani and John C. Beckering, PE issuance of Permit number CENAP-OP-R-2013-1033-23 the plaintiff's decedents were caused to suffer death by drowning.

383.     At all material times relevant to the subject matter described in this Complaint, the Fourteenth Amendment of the United States Constitution conferred upon the plaintiff's decedents a substantive due process right to be free of government officials' deliberate indifference to, or acts that increase the risk of serious injury or death from unjustified invasions of bodily integrity.

384.     At all material times relevant to the subject matter described in this Complaint, defendants Frank J. Cianfrani and John C. Beckering, PE owed plaintiff's decedents a duty to act in a manner to safeguard the of the plaintiff's decedents' due process right and liberty interest to bodily integrity secured by the Fourteenth Amendment of the United States Constitution.

385.     As a direct and proximate result of defendants Frank J. Cianfrani and  John C. Beckering, PE's actions which resulted in the undertaking of the aforementioned dredging operation and jetty construction project,  plaintiff's decedents were caused to suffer a violation of substantive due process rights as protected by the Fourteenth Amendment of the United States Constitution and those damages and loss aforementioned.

386.    At all material times relevant to the subject matter described in this Complaint, defendants Frank J. Cianfrani and John C. Beckering, PE acted with a degree of culpability that shocks the conscience of a reasonable person.

387.    The aforementioned actions of defendants Frank J. Cianfrani and John C. Beckering, PE were outrageous, extreme, beyond all possible bounds of decency, and are to be regarded as intolerable in a civilized community.

WHEREFORE, plaintiff Anterine Maple individually and as Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George prays for judgment against defendants Frank J. Cianfrani and John C. Beckering, PE, jointly and severally, and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven;

II.     That plaintiff be awarded exemplary damages as proven;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## SECOND CAUSES OF ACTION – SURVIVAL ACTION

### COUNT XVIII
### (Anterine Maple, Administratrix of the Estate of Kevin George, Jr. deceased, and the Estate of Zion George, deceased v Defendants)

388.    Plaintiff Anterine Maple incorporate by reference the previous paragraphs of the Complaint as if set forth fully herein.

389.    Plaintiff Anterine Maple advances this survival action by virtue of Delaware Code, Title 10, §§ 3701 through § 3708 [relating to Survival Action].

390.    This civil action is advanced to recover on behalf of the aforementioned statutory beneficiaries all damages recoverable under the Delaware Survival Act.

391.     Plaintiff Anterine Maple as the Administratrix of the Estate of Kevin George, Jr. and the Estate of Zion George, asserts those aforementioned causes of action, as if listed herein, on behalf of the Estate of Kevin George, Jr. and the Estate of Zion George.

392.     As a direct and proximate result of the aforementioned intentional, grossly negligent, careless, and reckless acts, omissions, or failures to act of the defendants, decedents Kevin George, Jr. and Zion George were caused to suffer emotional and physical pain and suffering prior to their deaths.

393.     As a direct and proximate result of the aforementioned intentional, grossly negligent, careless, and reckless acts, omissions, or failures to act of the defendants, decedents Kevin George, Jr. and Zion George were caused to suffer the loss of net earnings they would have earned between the date of their deaths and reasonable life expectancies.

394.     As a direct and proximate result of the aforementioned intentional, grossly negligent, careless, and reckless acts, omissions, or failures to act of the defendants, decedents Kevin George, Jr. and Zion George were caused to suffer the loss of retirement and social security income.

395.     As a direct and proximate result of the aforementioned intentional, grossly negligent, careless, and reckless acts, omissions, or failures to act of the defendants, decedents Kevin George, Jr. and Zion George were caused to suffer the loss of life's pleasures.

WHEREFORE, the plaintiff Anterine Maple as the Administratrix of the Estate of Kevin George, Jr., deceased and the Estate of Zion George, deceased, prays for judgment against the defendants, jointly and severally, and the relief which follows:

I.       That plaintiff be awarded compensatory damages as proven at trial;

II.      That plaintiffs be awarded exemplary damages;

III.     That plaintiffs be awarded reasonable attorney's fees as provided for pursuant to 42 U.S.C.A. § 1988;

IV.    That plaintiffs be awarded the cost of prosecuting this claim as provided for pursuant to 42 U.S.C.A. § 1988;

V.    That plaintiffs be awarded reasonable expert fees as provided for pursuant to 42 U.S.C.A. § 1988;

VI.    That plaintiffs be awarded interest and damages for prejudgment delay;

VII.    That plaintiffs be awarded further relief as this Court may deem appropriate.

## COUNT XIX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (Destiny Deluca v Defendants)

396.    Plaintiff Destiny Deluca incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

397.    On June 29, 2020, Kevin George, Jr., decedent, proposed marriage to Destiny Deluca.

398.    At all material times, relevant to the subject matter described in this Complaint, Kevin George, Jr., decedent, was the fiancé of Destiny Deluca.

399.    The defendants created a condition at South Bowers Beach resulting in an unreasonable danger which increased the risk of death by drowning of recreational swimmers, such as Kevin George, Jr., Zion George, Jr., Amir Harris and Destiny Deluca at South Bowers Beach and the Murderkill River.

400.    At all relevant times the defendants owed plaintiff Destiny Deluca a duty of care to refrain from acting in an intentional, reckless, or grossly negligent manner which would cause plaintiff Destiny Deluca to be subject to severe emotional distress.

401.    The defendants breached the duty of care owed to plaintiff Destiny Deluca by failing to take reasonable measures to warn of or otherwise safeguard recreational swimmers from the dangerous condition they created which increased the risk of death by drowning of recreational swimmers, such as the decedents Kevin George, Jr., Zion George, Jr., and plaintiffs Amir Harris and Destiny Deluca at South Bowers Beach.

402.    On June 30, 2020, as a direct and proximate result of the intentional, reckless, or grossly negligent actions or omissions of the defendants, plaintiff Destiny Deluca was placed in the immediate area of physical danger.

403.    On June 30, 2020, as a direct and proximate result of the intentional, reckless, or grossly negligent actions or omissions of the defendants, plaintiff Destiny Deluca was caused to have suffered severe emotional distress and physical consequences.

404.    On June 30, 2020, as a direct and proximate result of the intentional, reckless, or grossly negligent actions or omissions of the defendants, plaintiff Destiny Deluca was caused to have witnessed the drowning death of her fiancé Kevin George, Jr.

405.    The conduct of the defendants in choosing not to take reasonable measures to warn of or otherwise safeguard recreational swimmers, such as the plaintiff's decedent Kevin George, Jr., from the dangerous condition they created which increased the risk of death by drowning of recreational swimmers is outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and is to be regarded as atrocious, and utterly intolerable in a civilized society.

406.    The defendants are liable to plaintiff Destiny Deluca pursuant to Restatement (Second) of Torts § 46.

WHEREFORE, plaintiff Destiny Deluca prays for judgment against defendants jointly and severally, and the relief which follows:

I.      That plaintiff be awarded compensatory damages as proven;

II.     That plaintiff be awarded exemplary damages as proven;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT XX
## NEGLIGENT INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Destiny Deluca v Defendants)

407.    Plaintiff Destiny Deluca incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

408.    At all relevant times, the defendants owed plaintiff Destiny Deluca a duty of care to refrain from acting in a negligent manner which would cause plaintiff Destiny Deluca to be subject to severe emotional distress.

409.    The defendants breached the duty of care owed to plaintiff Destiny Deluca by failing to take reasonable measures to warn of or otherwise safeguard recreational swimmers from the dangerous condition they created which increased the risk of death by drowning of recreational swimmers, such as the decedents Kevin George, Jr., Zion George, Jr., and plaintiffs Amir Harris and Destiny Deluca at South Bowers Beach and the Murderkill River.

410.    As a direct and proximate result of the negligent actions or omissions of the defendants, on June 30, 2020, plaintiff Destiny Deluca was placed in the immediate area of physical danger.

411.    As a direct and proximate result of the negligent actions or omissions of the defendants, on June 30, 2020, plaintiff Destiny Deluca was caused to have suffered severe emotional distress and physical consequences.

412.    The defendants are liable to plaintiff Destiny Deluca pursuant to Restatement (Second) of Torts § 436.

413.    The defendants are liable to plaintiff Destiny Deluca pursuant to Restatement (Second) of Torts § 313.

WHEREFORE, plaintiff Destiny Deluca prays for judgment against defendants jointly and severally, and the relief which follows:

I.    That plaintiff be awarded compensatory damages as proven;

100

II.      That plaintiff be awarded interest and damages for prejudgment delay;

III.     That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT XXI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (Amir Harris v Defendants)

414.    Plaintiff Amir Harris incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

415.    Plaintiff Amir Harris grew up with and was raised in the same household with Kevin George, Jr., decedent, and Zion George, decedent.

416.    At all material times relevant to the subject matter described in this Complaint, Amir Harris had a relationship with Kevin George, Jr., decedent, and Zion George, decedent tantamount to brothers.

417.    At all relevant times, the defendants owed plaintiff Amir Harris a duty of care to refrain from acting in an intentional, reckless, or grossly negligent manner which would cause plaintiff Amir Harris to be subject to severe emotional distress.

418.    The defendants breached the duty of care owed to plaintiff Amir Harris by failing to take reasonable measures to warn of or otherwise safeguard recreational swimmers from the dangerous condition they created which increased the risk of death by drowning of recreational swimmers, such as the K decedents Kevin George, Jr., Zion George, Jr., and plaintiffs Amir Harris and Destiny Deluca at South Bowers Beach and the Murderkill River.

419.    On June 30, 2020, as a direct and proximate result of the intentional, reckless, or grossly negligent actions or omissions the defendants, plaintiff Amir Harris was placed in the immediate area of physical danger.

420.    On June 30, 2020, as a direct and proximate result of the intentional, reckless, or grossly negligent actions or omissions the defendants, plaintiff Amir Harris was caused to have suffered severe

emotional distress and physical consequences.

421.    On June 30, 2020, as a direct and proximate result of the intentional, reckless, or grossly negligent actions or omissions the defendants, plaintiff Amir Harris was caused to have witnessed the drowning deaths of his dear friends Kevin George, Jr., decedent and Zion George, decedent.

422.    The conduct of the defendants in choosing not to take reasonable measures to warn of or otherwise safeguard recreational swimmers, such as the plaintiff Amir Harris, from the dangerous condition they created which increased the risk of death by drowning of recreational swimmers is outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and is to be regarded as atrocious, and utterly intolerable in a civilized society.

423.    The defendants are liable to plaintiff Amir Harris pursuant to Restatement (Second) of Torts § 46.

WHEREFORE, plaintiff Amir Harris prays for judgment against defendants jointly and severally, and the relief which follows:

I.    That plaintiff be awarded compensatory damages as proven;

II.    That plaintiff be awarded exemplary damages as proven;

III.    That plaintiff be awarded interest and damages for prejudgment delay;

IV.    That plaintiff be awarded further relief as this Court may deem appropriate.

## COUNT XXII
## NEGLIGENT INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Amir Harris v Defendants)

424.    Plaintiff Amir Harris incorporates by reference the previous paragraphs of the Complaint as if set forth fully herein.

425.    At all relevant times, the defendants owed plaintiff Amir Harris a duty of care to refrain from acting in a negligent manner which would cause plaintiff Amir Harris to be subject to severe emotional distress.

426.    The defendants breached the duty of care owed to plaintiff Amir Harris by failing to take reasonable measures to warn of or otherwise safeguard recreational swimmers from the dangerous condition they created which increased the risk of death by drowning of recreational swimmers, such as the decedents Kevin George, Jr., Zion George, Jr., and plaintiffs Amir Harris and Destiny Deluca at South Bowers Beach and the Murderkill River.

427.    As a direct and proximate result of the negligent actions or omissions of the defendants, on June 30, 2020, plaintiff Amir Harris was placed in the immediate area of physical danger.

428.    As a direct and proximate result of the negligent actions or omissions of the defendants, on June 30, 2020, plaintiff Amir Harris was caused to have suffered severe emotional distress and physical consequences.

429.    The defendants are liable to plaintiff Amir Harris pursuant to Restatement (Second) of Torts § 436.

430.    The defendants are liable to plaintiff Amir Harris pursuant to Restatement (Second) of Torts § 313.

WHEREFORE, plaintiff Amir Harris prays for judgment against defendants jointly and severally, and the relief which follows:

I.    That plaintiff be awarded compensatory damages as proven;

II.    That plaintiff be awarded interest and damages for prejudgment delay;

III.    That plaintiff be awarded further relief as this Court may deem appropriate.

*[Signature appears on next page]*

Respectfully submitted,

By:   */s/ Kate Butler*
Kate Butler, Esquire
DE Attorney I.D. No. 6017
KATE BUTLER LAW
1509 Gilpin Avenue, Suite 3
Wilmington, DE 19806
Direct: (302) 966-9763
Fax: (302) 651-7960
kate@katebutlerlaw.com

*Attorney for Plaintiffs*

Dated   June 23, 2022