# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANTERINE MAPLE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DELAWARE DEPARTMENT OF NATURAL RESOURCES AND ENVIRONMENTAL CONTROL, et al., <br><br> Defendants. | Civil Action No. 22-857-GBW |

## MEMORANDUM ORDER

Pending before the Court are the motions of Defendants, Davis, Dowden & Feindel, Inc., Ken Eaton, PE, Gary Williams, PE ("DBF"), the Estate of Edward T. Fulford ("Fulford"), Mason Construction Company ("Mason"), Kingfisher Environmental Services ("Kingfisher"), Daniel J. Brower, Sarah W. Cookey, Frank M. Piorko, Charles E. Williams, II, and the Delaware Department of Natural Resources and Environmental Control ("DNREC"), and John C. Beckering, PE and Frank J. Cianfrani's (United States Army Corp of Engineers, i.e. "USACE") (collectively, "Defendants"), to dismiss Plaintiffs' Anterine Maple, et. al's ("Maple") complaint. *See* D.I. 30; D.I. 35; D.I. 36; D.I. 52; D.I. 57; D.I. 80. Having reviewed the parties' briefing, the Court grants-in-part and denies-in-part Defendants' motions to dismiss. *See id.* Defendants' motions to dismiss are granted-in-part to the extent that Defendants move to dismiss Maple's claims under Delaware law. The Court will issue a separate Order regarding Defendants' motion to dismiss Maple's claims under Federal law following the parties' briefing on that issue, as well as a separate Order regarding Maple's Motion to Change Venue. *See* D.I. 85; D.I. 33.

## I. BACKGROUND[1]

On February 8, 2014, DNREC completed a Maintenance Dredging and Beach Nourishment Project (the "Project") of the federal navigation channel at the mouth of the Murderkill River estuary entrance of the Delaware Bay. D.I. 46 at 2-4. The Project was awarded to defendant Manson. *Id.* Manson completed the Project in accordance with engineering plans and specifications prepared by DBF and Fulford. *Id.* Maple alleges that the Project amplified the tidal forces in the mouth of the Murderkill River and created an increased foreseeable extreme drowning hazard to unsuspecting recreational swimmers during the tidal change. *Id.*

On June 30, 2020, day-vacation-beachgoers Kevin George, Jr., Zion George, Jr., Amir Harris, and Destiny Deluca arrived at South Bowers Beach, Kent County, Delaware. *Id.* Around 2:47 p.m., Kevin George, Jr., Zion George, Jr., and Amir Harris entered the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach to swim. *Id.* No signs were posted warning them that the waters of the Murderkill River near the entrance channel of the Delaware Bay at South Bowers Beach were dangerous during the tidal change. *Id.* Upon entering the water Kevin George, Jr., Zion George, Jr., and Amir Harris discovered that the shallower water of the sand bar jetty suddenly dropped off at an underwater ledge descending to a depth of around eight (8) feet. *Id.* As a result, Kevin George, Jr., Zion George, Jr., and Amir Harris unexpectedly found themselves in water over their heads. *Id.* The strength of the tidal current pulled them under the surface of the Murderkill River and away from the shoreline. *Id.* While Kevin George, Jr., Zion George, Jr., and Amir Harris struggled to surface, Destiny Deluca ran to their aid, entering the Murderkill River in an attempt to rescue them. *Id.* Ms. Deluca was also pulled under the

---

[1] Under Rule 12(b)(6), the Court must accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the plaintiff. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

surface. *Id.* Amir Harris and Destiny Deluca were able to reach the shoreline and save themselves from drowning. *Id.* Tragically, Kevin George, Jr. and Zion George, Jr. drowned. *Id.*

On June 24, 2022, Maple filed the instant action asserting causes of actions under the 14th Amendment, 42 U.S.C.A. § 1983, 10 Del. C. § 4001 (the Delaware Tort Claims Act), the Delaware Constitution, and other Delaware statutes for, *inter alia*, negligence, professional negligence, wrongful death, intentional infliction of emotional distress, and negligent infliction of emotional distress. *See* D.I. 1.

## II. LEGAL STANDARD

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

"'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 WL 11446482 (3d Cir. Apr. 6, 2018). Rule 12(b)(6)

3

requires the court to accept all factual allegations in the complaint as true and view them in the light most favorable to plaintiff. *AbbVie Inc*, 976 F.3d at 351. The court may consider matters of public record and documents attached to, "integral to[,] or explicitly relied upon in" the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (cleaned up); *see also Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738, 739 (3d Cir. 2020) (same). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420).

## III. DISCUSSION

Defendants assert that the Delaware Builders' Statute, 10 Del. C. § 8127(b)(1)-(2), bars Maple's claims under Delaware law because (1) Maple's causes of action are for Defendants' purported failure to warn, and (2) Defendants' Project was not an "improvement" under the Statute. For the reasons discussed below, the Court finds that the claims which Maple asserts under Delaware law against all Defendants are statutorily barred by Delaware's six (6) year statute of repose as provided by the Delaware Builders' Statute.[2]

Section 8127 of Title 10 of the Delaware Code ("the Builders' Statute" or "the Statute") provides, in relevant part:

> (b) No action, whether in or based upon a contract (oral or written, sealed or unsealed), in tort, or otherwise, to recover damages or for indemnification or contribution for damages, resulting:
>
> (1) From any alleged deficiency in the construction or manner of construction of an improvement to real property and/or in the designing, planning,

---

[2] Defendants raised other arguments in support of their respective Motions to Dismiss. However, with reference to Maple's Delaware law claims, because the Court agrees with Defendants that Delaware Builders' Statute bars Maple's claims, the Court finds that it need not reach the merits of Defendants' other arguments.

4

supervision and/or observation of any such construction or manner of construction; or . . .

(3) From any alleged personal injuries arising out of any such alleged deficiency; or

(4) From any alleged wrongful death arising out of any such alleged deficiency; or . . .

(6) From any alleged injury unaccompanied with force or resulting indirectly from any such alleged deficiency;

shall be brought against any person performing or furnishing, or causing the performance or furnishing of, any such construction of such an improvement or against any person performing or furnishing, or causing the performing or furnishing of, any such designing, planning, supervision, and/or observation of any such construction or manner of construction of such an improvement, after the expiration of 6 years from whichever of the following dates shall be earliest:

a. The date of purported completion of all the work called for by the contract as provided by the contract if such date has been agreed to in the contract itself; . . .

f. The date when the construction of such an improvement as called for by the contract has been substantially completed;

g. The date when an improvement has been accepted, as provided in the contract, by the owner or occupant thereof following the commencement of such construction;

The Builders' Statute further defines "construction," "deficiency" and "improvement" as:

(2) "Construction" shall include construction, erection, building, alteration, reconstruction and destruction of improvements to real property.

(4) "Deficiency" shall include acts and actions performed and failures to act and omissions.

(5) "Improvement" shall include buildings, highways, roads, streets, bridges, entrances and walkways of any type constructed thereon, and other structures affixed to and on land, as well as the land itself, except that such term shall not include buildings, entrances, walkways and structures used

5

or intended to be used at the time of such construction primarily for residential purposes and uses.

Stated another way, the Builders' Statute provides a six-year limitation period for actions for damages, indemnification, or contribution for property damage, real, personal, or mixed, arising out of any deficiency in the construction of an improvement to real property or the design, planning, supervision, or observation of any such construction. 10 Del. C. § 8127(b)(1)-(2). "The limitation period begins to run at the earliest of several designated dates, irrespective of the date of the injury." *City of Dover, et al. v. International Telephone and Telegraph Corp. et al.*, 514 A.2d 1086, 1089 (Del. 1986). "The statute in question is a true statute of repose. It prevents a claim from arising, whereas a statute of limitations bars an accrued cause of action . . . . . Thus, the passing of the six-year period deprives the injured party of a legal right to redress." *Id.* (citations omitted).

Maple does not dispute Defendants' contention that the relevant designated date in this case, if the Builders' Statute were to apply, is "the date of purported completion of all the work called for by the contract as provided by the contract if such date has been agreed to in the contract itself." 10 Del. C. § 8127(b); *see, e.g.*, D.I. 37 at 12-14. The contract between Manson and DNREC called for completion of all work by no later than February 28, 2014.[3] *Id.* Thus, under the Builders' Statute, the limitation period expired on February 28, 2020. *Id.* Maple's complaint was filed on June 24, 2022. D.I. 1.

---

[3] Maple argues that the Court should not consider the contract in resolving Defendants' motions to dismiss. The Court finds that the contract is "integral" to the complaint and, thus, considers it. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see also, e.g.*, D.I. 1 at ¶¶13, 14, 17, 21, 51, 76 – 87 and 134 (referencing the contract).

6

### A. The Delaware Builders' Statute Applies to Maple's Claims.

The Court finds that each of Maple's claims under Delaware law are time-barred by the Builders' Statue because Defendants' alleged duty to warn arose from either (1) the Project itself or (2) the planning of the Project. Maple argues that the Builders' Statute does not apply because Maple's claims are for a failure to warn. *See, e.g.*, D.I. 82 at 16-17. Maple argues that some defendants negligently planned or authorized the Project by failing to require that warning signs regarding the drowning risk at the Murderkill River entrance be posted. *See, e.g., id.* (negligent authorization by USACE). Maple further argues that other defendants' construction rendered the Murderkill River entrance more dangerous and that those defendants failed to warn potential swimmers of that increased danger. *See, e.g.*, D.I. 45 at 1 (negligent failure to post warning signs by Manson). However, Maple's theory does not take Defendants' conduct outside of the Builders' Statute because Defendants' alleged duty arose from their negligent actions in "planning" and "construct[ing]" the Project. *See* 10 Del. C. § 8127(b)(1)-(2).

In reaching this finding, the Court distinguishes an individual's duty to warn of a dangerous condition that arose from that individual's conduct from a property owner's duty to warn visitors of dangerous conditions on her property. *See generally* 25 Del. C. 1953 § 1501. A property owner's duty to warn of a dangerous condition is, for the most part[4], independent of how that dangerous condition came to be on the property. *See id.* An individual's duty to warn of a dangerous condition that he himself created, however, arises from that individual's creation of the dangerous condition. Here—where Maple argues that Defendants had a duty to warn of the danger

---

[4] Delaware law does not impose liability for accidents on property unless the accident was "intentional" or caused by "wilful or wanton disregard of the rights of others" on the part of the owner or occupier. Thus, for example, how a dangerous condition came to be might be relevant in determining whether an owner was acting in "wanton disregard" of the rights of others. *See id.*

7

that Defendants created—the Court finds that Maple's claims are fairly characterized as allegations of a deficiency in the construction or planning of the Project. *See* 10 Del. C. § 8127(b)(1)-(2). Thus, because Maple did not allege that Defendants own, or otherwise control, the property and, accordingly, have a general duty to warn of dangerous conditions on the property, the Court finds that Maple's causes of action are covered by the Builders' Statute.

### B. The Project was an Improvement under the Builders' Statute.

Maple argues that the Project was not an "improvement" within the meaning of the Builders' Statute. *See, e.g.*, D.I. 46 at 9-13. Maple first argues that dredging is not an "improvement" because an "improvement" requires a "structure." *Id.* at 10-12. Alternatively, Maple argues that the Project was not an improvement because an improvement must be "permanent," which Maple contends the Project was not. *Id.* at 12-14.

The Court finds that an improvement, as defined by the Builders' Statute, need not be a structure. The Builders' Statute defines three categories of "improvement[s]", namely: (1) "buildings, highways, roads, streets, bridges, entrances and walkways of any type constructed thereon," (2) "other structures affixed to and on land," and (3) "the land itself." 10 Del. C. § 8127(b)(1)-(2). Maple argues that the "the land itself" is not a separate category; rather, "other structures" is antecedent to, and modifies, "the land itself." *See, e.g.*, D.I. 46 at 9. The Court declines to adopt Maple's proposed construction because that construction would define an "improvement" as, *inter alia*, "structures affixed to and on land, and structures affixed to the land itself. *Id.* The Court finds no meaningful difference between "other structures affixed to and on land" and "other structures affixed to the land itself." *See* 10 Del. C. § 8127(b)(1)-(2). Therefore, to give effect to each phrase in the Builders' Statute, the Court finds that construction of "the land itself" can constitute an "improvement" under the Builders' Statute. *Id.*

8

The Court also finds that the Project was an "improvement." One, non-exclusive, definition Delaware courts have applied to "improvement," as used in § 8127, is "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor and money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Standard Chlorine of Delaware, Inc. v. Dover Steel Co.*, No. 87C–DE–194–1–CV, letter op. at 3, 1988 WL 32044 (Del. Super. Ct. March 31, 1988). Maple argues that the Project was not intended to be "permanent" because, *inter alia*, sand erodes over time. *See, e.g.*, D.I. 46 at 13. However, Maple concedes that the Project's beach sand replenishment was part of a ten (10) year plan and that the sand was not intended to be moved once placed. *Id.*

In considering permanency, Delaware courts have considered whether the object in question was intended to be moved, along with the difficulty attendant to moving the object. *See, e.g., Thompson v. Murata Wiedemann, Inc.*, 2011 WL 5624374 at *3 (Del. Super. Ct. Nov. 17, 2011); *Davis v. Catalytic, Inc.*, 1985 WL 189329 at *6 (Del. Super. Ct. Dec. 11, 1985); *Davis v. Saville*, 2012 WL 6858945 (Del. Super. Ct. Oct. 23, 2012). The Court finds that the Project was permanent because, as conceded by Maple, the sand was not intended to be removed. Given that the sand was placed as part of a ten (10) year plan, the Court is not persuaded that the sand's eventual erosion renders its placement not permanent. *Id.*

Moreover, the Court finds that the sand was "affixed to" the land. In *Saville*, a Delaware court found that mounds of dirt excavated during a project to improve a portion of Interstate Highway I–95 and placed on the median between the north and southbound lanes were "affixed to" the land. 2012 WL 6858945 at *1, 5. Similarly, in the instant case, Defendants dredged the entrance channel of the Murderkill River and deposited sand on the beach. Accordingly, the Court

finds that the sand was "affixed to" the land at the location where the sand was placed. As such, because the Project was further intended to make the property "more useful," the Project qualifies as an "improvement" under the Statute. *See* D.I. 56 at 4.

Given the findings that the Project was an improvement under the Builders' Statute, and that the limitations period expired prior to the filing of this lawsuit, the Court concludes that the Builders' Statute bars Maple's claims under Delaware law. Accordingly, the Court grants-in-part Defendants' motions to dismiss. The Court will issue a separate Order ruling on defendants DNREC and USACE's motions to dismiss Maple's claims under Federal law following the parties' briefing on that issue, as well as a separate Order ruling on Maple's Motion to Change Venue. *See* D.I. 85; D.I. 33.

## IV. CONCLUSION

WHEREFORE, at Wilmington this 19th day of December, 2023, **IT IS HEREBY ORDERED** that:

(1) Defendants' DBF, Fulford, Mason, Kingfisher, DNREC, and USACE Motions to Dismiss are **GRANTED-IN-PART** to the extent that Defendants' move to dismiss Maple's claims under Delaware law. *See* D.I. 30; D.I. 35; D.I. 36; D.I. 52; D.I. 57; D.I. 80.

(2) Defendants' DNREC and USACE Motions to Dismiss are **DENIED-IN-PART** to the extent that Defendants' move to dismiss Maple's claims under Federal law. *See* D.I. 35; D.I. 80.

(3) Maple's Motion for Leave to File a Sur-Reply in Support of Opposition to Motion of Defendant, Manson Construction Company Under Rule 12(b)(6), and Mason's

10

Motion to Strike the Sur-reply Brief of Plaintiff's are **DENIED-AS-MOOT**. *See* D.I. 69; D.I. 72.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Date: December 19, 2023

11